## CITY OF BURLINGTON V. JOHN STOCKWELL.

### No. 350.

1. NUISANCE—*city of second class may prevent, by fine and imprisonment.* The council of a city of the second class has the power to prevent and remove nuisances by an ordinance which provides a punishment by fine or imprisonment or both.

2. ———— *city of second class may declare stock yards and hogpens to be.* The council of a city of the second class has power to declare those annoyances peculiar to stock yards and hogpens nuisances whenever they become offensive to the public.

3. ———— *what constitutes a public, and what a private.* A nuisance which affects a place where the public has a legal right to go, and where the people congregate ; or, if its influence extends where they are likely to go, is a public nuisance. A nuisance which affects a single person or a determinate number of persons in the enjoyment of some private right not common to the public, is a private nuisance.

4. ———— *question as to public, is not number of persons annoyed, but possibility of annoyance to public.* If the facts are sufficient to constitute a public nuisance it is not a question of the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights.

5. ———— *public nuisance being proved, showing that kept as free as possible from objectionable attributes, no defense.* If the facts show that the stench from hog-pens is a public nuisance, it is no defense to show that the pens are kept as clean as they could be under the circumstances.

6. ———— *must be objectionable to person of ordinary sensitiveness.* The stench of a hogpen to be a nuisance must be offensive to a person of *ordinary* sensitiveness.

7. ———— *no defense that other, in same neighborhood.* It is no defense to the charge of maintaining a nuisance that there are other nuisances in the same neighborhood.

Appeal from Coffey District Court. Hon. W. A. Randolph, Judge. Opinion filed March 3, 1897. *Affirmed.*

570    City of Burlington v. Stockwell.

S. Dept.                  Opinion.   Dennison, P. J.              5 Kan. App.

*S. D. Weaver*, and *E. J. Crego*, for appellee.

*Geo. E. Manchester*, for appellant.

Dennison, P. J.    This was a criminal prosecution in the Police Court of the City of Burlington, against John Stockwell, for the violation of a city ordinance. The defendant was convicted in that court and appealed therefrom to the District Court, where upon trial he was again convicted and sentenced to pay a fine of five dollars and the costs of the case.    From this judgment he appeals to this court.

The complaint, omitting the formal parts, reads as follows :

" W. M. Venard, being duly sworn, on oath says that on or about the first day of August, A. D. 1894, in the city of Burlington, county of Coffey, and State of Kansas, one John Stockwell did then and there, ever since has and does now, unlawfully keep and use certain yards and pens on the premises under his control, to wit : lots eleven and twelve and thirteen in block thirty-three in said city of Burlington, in and upon which said yards and pens, a number of swine, to wit : about twenty swine, were then and there, ever since have been and now are, kept, in such manner that such yards and pens then and there became, ever since have been and now are, foul, injurious and offensive, and did then and there, ever since have and now do cause and create a stench and noxious, disagreeable and unhealthful smell, and thereby said yards and pens then and there became, ever since have been and are now, offensive to persons residing in the vicinity of said yards and pens and annoying to the public, and is and was a nuisance, contrary to the ordinance of said City in such cases made and provided and against the peace and dignity of said City.

The complaint and subsequent prosecution there-

under were based on the following ordinance of the City of Burlington :

"Ordinance No. 12, An ordinance relating to nuisances.
*"Be it ordained by the mayor and councilmen of the City of Burlington:*

"SEC. 5.  If any person or persons shall own, keep or use any yard, pen or place on his or her premises, or premises under his or her control, within this City, in or upon which any number of cattle, swine or other animals may be kept in such manner as to become offensive to any persons residing in the vicinity, or annoying to the public, he or she shall be deemed to maintain a nuisance in this City, and shall be fined in any sum not exceeding one hundred dollars."

The contention is that the City authorities had no power under the Constitution and laws of the State to pass the ordinance upon which this prosecution is founded.  It is plain that the council of a city of the second class has the authority to prevent and remove nuisances by an ordinance which provides a punishment by a fine or imprisonment or both.  Paragraph 817 of the General Statutes of 1889 provides that, " the council may . . . prevent and remove nuisances."

1. Second-class city may prevent nuisances.

Paragraph 824 provides :

"For any purpose or purposes mentioned in the preceding sections, the council shall have power to enact and make all necessary ordinances, rules and regulations . . . and all ordinances may be enforced by prescribing and inflicting upon inhabitants or other persons violating the same, such fine not exceeding one hundred dollars or such imprisonment not exceeding three months, or both such fine and imprisonment, as may be just for any one offense, recoverable with costs of suit, together with judgment of imprisonment until the fine and costs be paid or satisfied ; and any person committed for the non-payment of fine and costs or either, while in custody, may be compelled to work on the streets, alleys, avenues,

areas and public grounds of the city under the directions of the street commissioner or other proper officer, and at such rate per day as the council may by ordinance prescribe, until such fine and costs are satisfied.''

The attorney for the appellant contends that cities of the second class have not the power to declare those annoyances peculiar to stock yards and hogpens nuisances and to punish the keeper thereof for the maintenance of the nuisance, unless they are detrimental to the public health and general welfare of the city. This contention is based upon the fact that in the eleventh subdivision of paragraph 555, General Statutes of 1889, the mayor and council of cities of the first class are given power to prevent and remove nuisances, and also to suppress hogpens, slaughterhouses and stock yards, or to regulate the same, and prescribe and enforce regulations for cleaning and keeping the same in order. It is argued that, as the Legislature granted cities of the first class the same power to ''prevent and remove nuisances'' that it gave to cities of the second class, and that as it also gave to cities of the first class, in addition thereto, the power to ''suppress and regulate hogpens,'' that this is a legislative construction determining that the power to ''prevent and remove nuisances'' does not include the power to ''suppress and regulate hogpens.'' The legal principle claimed will be admitted, but the application is not correct. Under

2. Second-class city may declare hog-pens nuisances.

these statutes a city of either the first or second class has the power to prevent and remove nuisances. This will include everything that comes within the legal definition of a public nuisance. A city of the first class also has the power to suppress hog-pens or to regulate them although they may not be legally a public nuisance. A city of the second class has no such power.

CITY OF BURLINGTON v. STOCKWELL. 573

March 3, 1897.      Opinion.   Dennison, P. J.          E. Div.

It is also contended that the statute gives cities of the second class power to "prevent and remove nuisances," but that it does not give such cities power to punish persons guilty of maintaining them, by criminal prosecution. This power is clearly conferred by paragraph 824, *supra.* The authority to fine and imprison is given for the purpose of enforcing the ordinance.

It is also contended that the ordinance is void for the reason that it undertakes to punish for the maintenace of a private nuisance. This contention is based upon the language of the ordinance in which it says, "to be or to become offensive to any person or persons residing in the vicinity, or annoying to the public." It is argued that if it is offensive to but one person it is a private nuisance, and that to be a common nuisance it must affect the community at large. Admitting the thing complained of to be a nuisance, the test is tersely stated in American and English Encyclopedia of Law, vol. 16, p. 927:

"A nuisance, to be a public nuisance, must be in a public place, or where the public frequently congregate, or where members of the public are likely to come within the range of its influence; for if the act or use of property be in a remote and unfrequented locality, it will not, unless *malum in se*, be a public nuisance."

And in Wood on Nuisances (2d ed.), section 71:

"In order to constitute a public nuisance, the injurious results to the public must always be of such a character and extent, that, if affecting the rights of an individual only, they would form the basis of a private action. The only distinction between a public and private nuisance arises from the difference in effect. In the one case, it is confined to a single individual or to an injury to individual rights, while in the other, it affects the rights of individuals only as

574   City of Burlington v. Stockwell.

S. Dept.         Opinion. Dennison, P. J.          5 Kan. App.

members of the public. It is not so much a question whether a large number of persons happened to be annoyed by the act, as, whether the act *itself* was such, and in such a place as that the natural effect thereof would be to annoy or offend all who came within its sphere.''

If the nuisance affects a place where the public has a legal right to go, and where people frequently congregate, or if its influence extends where they are likely to go, it is a public nuisance. If the nuisance affects a single person or a determinate number of persons in the enjoyment of some private right not common to the public, it is a private nuisance. If the facts are sufficient to constitute a public nuisance, it is not a question of the number of persons annoyed but the possibility of annoyance to the public by the invasion of its rights. The ordinance is valid and the court did not err in refusing to quash the complaint nor in overruling the motion in arrest of judgment.

3. Public and private nuisances, what constitute.

4. Question as to public nuisance, what is.

During the trial the court gave among others, the following instructions :

'' 5. If you believe from the evidence that the pig-pens of the defendant gave forth a stench and a disagreeable odor which was offensive to persons residing in the vicinity, or annoying to persons who passed near said pens, then you will find the defendant guilty, and it will make no difference whether the defendant keeps the pens as clean as the same could be kept under the circumstances with the number of hogs in them that the evidence shows was there.

'' 6. It is not necessary in order to establish the guilt of defendant that the pens should be offensive to every person residing in the vicinity or to every person who came near said pens. It is sufficient if the evidence shows that the pens were offensive to any one person of ordinary sensitiveness residing in the

vicinity or to some of the persons who passed so near said pens that the same were annoying to them. The pens would be annoying to the public even though a very small portion of the people were affected thereby.

"7. Before you can find the defendant guilty as charged in this case you must not only find that the pens of defendant were by him kept so as to have been offensive to certain individuals, but they must have been kept so as to have been offensive to the ordinary individual, that is, it will not do to convict because some very sensitive person felt it to be offensive. It must have been kept in such a manner as to necessarily offend a person of ordinary sensitiveness.

"8. If you find from the evidence that the defendant at the time and place charged did keep some hogs in a pen and such pen became foul and from it offensive odors arose which odors were annoying and offensive to persons living in the vicinity of such pens, then you will find the defendant guilty as charged, otherwise you will find him not guilty."

The appellant claims that the court erred in instructing the jury that it would be no defense that the pens were kept as clean as they could 5. Effort to keep nuisance from being objectionable, no defense. be under the circumstances. The instruction given by the court upon this subject is clearly the law:

"If the facts be sufficient to constitute a public nuisance, the defendant may not show that the business is carried on in the most approved manner. Care is not an element. The fact that injurious results proceed from the act will be sufficient." Am. & Eng. Ency. of Law, vol. 16, p. 931.

The appellant also claims that the court erred in giving instruction number six. Bearing in mind the distinction between public and private nuisances and construing this instruction with the other instructions herein copied, we must hold that the court committed no error in the instructions. It is evident that the

576     CITY OF BURLINGTON v. STOCKWELL.

S. Dept.          Opinion.   Dennison, P. J.          5 Kan. App.

6. Nuisance must offend person of ordinary sensitiveness.
court was trying to impress upon the jury that if the stench was offensive to an extremely sensitive person it would not be sufficient to constitute a nuisance, but that if the stench was not offensive to a person of blunted sensibilities still it might be a nuisance. The true test is that the stench is offensive to any person of ordinary sensitiveness.

The appellant requested the court to give the following instruction, and claims error in its refusal to do so :

" If you find from the evidence that other causes than defendant's pens gave rise to an offensive odor in that vicinity and materially contributed to the condition complained of by witnesses then you cannot find the defendant guilty."

No other nuisances were complained of in this action.. It cannot matter how many nuisances were located in the neighborhood. The only way to rid the neighborhood of them was to remove and prevent them. It can be no defense to any one of them that there were others. If it were otherwise they could all set up this defense and the authorities would be powerless to prevent or remove any of them.

6. Existence of other nuisances no defense.

The judgment of the District Court is affirmed.