PEOPLE v. CURTIS.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1912.)

1. NUISANCE (§ 61*)—"PUBLIC NUISANCE."

As regards the offense of maintaining a public nuisance, a place kept and held out as one for women to resort to have unlawful abortions committed is such a nuisance within Pen. Law (Consol. Laws 1909, c. 40) § 1530, defining the same.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 142–151; Dec. Dig. § 61.*

For other definitions, see Words and Phrases, vol. 6, pp. 5799–5804.]

2. NUISANCE (§ 92*)—PUBLIC NUISANCE—MAINTENANCE—EVIDENCE.

Evidence on a prosecution for maintaining a public nuisance consisting of a place kept and held out as one for women to resort to have unlawful abortions committed *held* sufficient.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 212; Dec. Dig. § 92.*]

3. CRIMINAL LAW (§ 1136*)—APPEAL—RIGHT TO ALLEGE ERROR.

A man tried with a woman for maintaining a place for the commission of abortions cannot complain that, after she had testified she was married to him, another testified she was married to him, and had not been divorced; this having been received only against the woman defendant.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3005, 3006; Dec. Dig. § 1136.*]

4. CRIMINAL LAW (§ 1038*)—APPEAL—REVIEW—FAILURE TO OBJECT—INSTRUCTIONS.

In order to complain of an illustration in the charge, the attention of the trial court should have been called to it at the time.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2646; Dec. Dig. § 1038.*]

Appeal from Monroe County Court.

Walter H. Curtis appeals from a judgment of conviction, and from an order denying a motion for new trial on the minutes. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

P. Chamberlain, of Rochester, for appellant.

James Mann, Asst. Dist. Atty., of Rochester, for respondent.

KRUSE, J. Walter H. Curtis and Mary Curtis were jointly indicted and convicted of the offense of committing and maintaining a public nuisance. Sentence was suspended upon Mary Curtis. Walter Curtis alone appeals.

The indictment charges that the defendants, in disregard of the common duties of morality and decency, in a certain place and building situate upon a certain street in the city of Rochester, unlawfully did commit a public nuisance by there doing acts which did continually offend public decency and annoy, injure, and endanger the comfort, repose, health, and safety of a considerable number of persons there, in that they kept and maintained the building for the unlawful purpose of committing and performing therein unlawful abortions, that such abortions were performed therein, and that they held themselves out to the public in such a manner as to give the impression to divers persons that the building was kept and maintained by them as a place where unlawful abortions were continually committed and performed, and where immoral women might resort and come and remain for the purpose of having committed unlawful abortions. There are other allegations in the indictment, but these are sufficient to show the nature and grounds of the offense charged.

[1, 2] If the place maintained by the defendants was of the character described in the indictment, it clearly was a public nuisance, and the defendants were properly convicted. Penal Law, § 1530; People v. Hoffman, 118 App. Div. 862, 103 N. Y. Supp. 1000, affirmed 189 N. Y. 561, 82 N. E. 1130. But it is contended by the appellant that the case is absolutely barren of any evidence that any act of unlawful abortion was ever committed at this place, or that any pregnant women ever resorted to this place for that purpose.

It is true that there is no direct evidence of those facts; but there is evidence from which that inference may be drawn, and that the place as held out by the defendants was of that character. The appellant's interview with the police officer, who ostensibly went to him to make an arrangement to have an abortion committed upon some one, who it turned out was a mythical person, tends to show that the place was of the nature charged in the indictment. Not only was the arrangement made for performing the operation, but the price was fixed. The appellant stated that it would be necessary to have the operation performed there. He stated that he would give the woman a nice room, and his wife would take care of her. He gave the police officer a phial of medicine and a package of tablets for the woman to try, but thought she was too far along to do any good. It further appeared that this same officer wrote a letter, assuming the name of Ethel Mason, directed to the appellant and mailed it at a nearby post office, making inquiry the nature of which the appellant seems to have understood, to which he replied by letter stating that he might

help her under certain conditions, and that it would be necessary for her to come and stay at his house, saying that, when she left, she would be all right, and fixing the cost all told at $30.

Two women acting as detectives also gave testimony of making arrangements with him for performing an abortion at his place upon each of them, one of whom assumed to be the woman for whom the police officer had made the arrangement. The other was a police matron. It is unnecessary to state their testimony in detail. It is true neither of these women were pregnant, and no operation was attempted to be performed upon them. What was done by them and the police officer was for the purpose of entrapping the defendants, which has been frequently resorted to for the purpose of detecting crime and punishing criminals. Two cases somewhat similar to this in that respect are People v. Conrad, 102 App. Div. 566, 92 N. Y. Supp. 606, affirmed 182 N. Y. 529, 74 N. E. 1122, and People v. Moore, 142 App. Div. 402, 127 N. Y. Supp. 98, affirmed 201 N. Y. 570, 95 N. E. 1136. The testimony of these witnesses is corroborated by the letter and other circumstances, such as the tablets and fluid furnished by the appellant to the police detective, known as emmenagogue, and supplied by him to produce abortion.

The defendant who appeals was not sworn. The other defendant testified, and other witnesses were called by the defendants, tending to show that the place actually kept there was not of the character charged, but I think the evidence clearly shows that the place was so held out by the appellant, and that it was also a question of fact as to whether it was not actually a place where operations were performed and persons harbored, as charged in the indictment.

The question as to whether the appellant was also guilty of abortion in furnishing these medicines or drugs, for the purpose for which they were supplied (Penal Law, § 80), is not before us. As was said by Mr. Justice Lambert in the Hoffman Case (People v. Hoffman, supra):

"The offense of abortion is one thing; that of maintaining premises open to the public for the purpose of consummating that crime is another and separate offense against the peace and good order of the state. It is an inducement to moral laxity and to crime, and is within the letter and spirit of the sections of the Penal Code here under consideration."

[3] Several rulings upon questions of evidence are challenged, the most serious of which is the proof that the woman who was indicted with the appellant was not in fact his lawful wife. She had testified that she was married to him, and thereupon the evidence was given by another woman, who testified that she was married to the appellant and had never been divorced. That evidence, however, was only received against the woman defendant, who does not appeal.

[4] The charge is also criticised in making reference by way of illustration to an oriental tale of Mohammedan mythology, the details of which need not be recited here. It is sufficient to say that the charge was not excepted to in that regard, and we do not think that, in any event, it affords sufficient grounds for granting a new trial. If the illustration was inapt and prejudicial to the defendant as coun-

sel now contends, the attention of the trial judge should have been called to it at the time. Evidently the judge did not think so.

We think that no reversible errors were committed, and that the defendant was properly convicted. The judgment of conviction should, therefore, be affirmed. All concur.