[Civ. No. 2910.  Second Appellate District, Division Two.—June 10, 1919.]

JOHN BOYD, Appellant v. CITY OF SIERRA MADRE et al., Respondents.

[1] MUNICIPAL CORPORATIONS—POLICE POWERS—LIMITATIONS UPON ITS EXERCISE.—The police power granted to municipalities by the state constitution is as broad as that possessed by the legislature itself, subject to the two exceptions that its exercise by any city must be confined to the municipality and must not conflict with the general laws of the state. The exercise of this power is not limited to the regulation of such things as already have become nuisances or have been declared such by the judgment of a court.

[2] ID.—EXTENT OF POLICE POWERS.—A city's power to prohibit or regulate not only includes nuisances, but extends to everything ex-

pedient for the preservation of the safety, health, or comfort of the city's inhabitants.

[3] ID. — DIVISION OF CITY INTO DISTRICTS — PROHIBITION AGAINST MAINTENANCE OF CORRAL.—A municipality has power, by ordinance, to divide its territorial limits into business and residence districts, and prohibit in the residence district the maintenance of any corral wherein mules and burros are kept for hire.

[4] ID. — OFFENSIVE OCCUPATIONS — PROHIBITION IN POPULOUS COMMUNITIES.—Occupations which, by the noise made in their pursuit, or the odors they engender, are offensive to the senses, may be interdicted by law, in the midst of populous communities, on the general and rational principle that every person ought so to use his property as not to injure his neighbors, and that private interests must be made subservient to the general interest of the community.

[5] ID. — MAINTENANCE OF LIVERY-STABLE OR CORRAL — PROHIBITION AGAINST AND REGULATION OF—VALIDITY OF ORDINANCE.—An ordinance forbidding in the residence district of a city any livery-stable or corral for the keeping therein of horses, mules, jennies, jacks, or burros for hire, and which likewise forbids, in the business district, any such livery-stable or corral without a permit from the city board of trustees, on written application specifying the number and kind of animals desired to be so kept, the period of time and the place of keeping, and the kind of business to be transacted, is not arbitrary nor unjustly discriminatory.

[6] ID.—DISCRIMINATORY POWER VESTED IN CITY TRUSTEES—PRESUMPTION AS TO ITS EXERCISE.—The fact that, under such ordinance, permission to maintain, in the business district, a corral for horses, mules, or burros may be granted by the city trustees to one person and denied to another, does not impair any constitutional right. The question in each case is whether the establishing of a corral is likely, in the hands of the applicant, to be a nuisance to the neighborhood; and in the absence of any evidence to the contrary, the courts must assume that the discrimination will be made with due regard to the interests of the applicant and the public, and upon conditions that will accord with the health and comfort of the community.

[7] ID.—REGULATION OF BUSINESS—APPLICATION OF ORDINANCE.—The fact that the corral of a particular person was kept in a cleanly and sanitary manner affords no reason why he should be specially exempt from the provisions of an ordinance designed to regulate a business which, as conducted by some persons at least, is fraught with peril to the community's comfort, if not its very health.

3. Municipal control over livery-stables, note, 38 L. R. A. 653.

5. Power of municipal corporation to make right to transact certain business dependent upon consent of municipal authorities, note, 9 L. R. A. (N. S.) 659.

[8] Id.—Duty of Legislative Body—Exercise of Power—Review by Courts.—Primarily, it is for the city's legislative body, clothed with police power by direct grant from the constitution, to determine when and what regulations are essential; and its determination in this regard, in view of its better knowledge of all the circumstances and the presumption that it is acting with due regard for the rights of all parties, will not be disturbed by the courts, unless it plainly can be seen that the regulation has no relation to the protection of the health, safety, comfort, or well-being of the community, but is a clear invasion of person or property rights under the guise of police regulation.

[9] Id.—Regulation of Things or Acts Which may Become Nuisances.—Whenever a thing or act is of such a nature that it may become a nuisance, or may be injurious to the public health or obnoxious to the comfort of a community, if not suppressed or regulated, the legislative body, in the exercise of its police powers, may make and enforce ordinances to regulate or prohibit such act or thing, although it may never have been obnoxious or injurious in the past.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Wellborn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Rose & Scoville for Appellant.

Charles C. Montgomery for Respondents.

FINLAYSON, P. J.—This is an action to enjoin the city of Sierra Madre from enforcing an ordinance that forbids, in the residence district of the city—defined by the ordinance—any livery-stable or corral for the keeping therein of horses, mules, jennies, jacks, or burros for hire, and which likewise forbids, in the business district—defined in the ordinance—any such livery-stable or corral without a permit from the city board of trustees, on written application specifying the number and kind of animals desired to be so kept, the period of time and the place of keeping and the kind of business to be transacted. Plaintiff is engaged in the business of furnishing burros and mules for hire. For that purpose he has ten burros and four mules, keeping them in a corral within the residence district of the city.

The appeal is upon the judgment-roll. The lower court found that appellant has kept and maintained his corral "in a cleanly, wholesome (*sic*) and sanitary manner"; but that, prior to the passage of the ordinance, there were, in the vicinity of appellant's corral, two other corrals, wherein such animals were kept for hire, in which there was "an accumulation of manure and other filthy substances of various kinds, generating noxious odors and breeding and attracting flies and other vermin; that said corrals and the business conducted therein and thereupon were the source of many loud, disagreeable, and discordant noises from the braying of the animals, their footbeats on the street and sidewalk, the cries and loud talk of their attendants, and otherwise; and that said businesses were the cause of much dust, dirt and discomfort to the inhabitants of the residential district described in the ordinance."

Appellant claims that the ordinance is unreasonable and unjustly discriminatory, and that its enforcement will deprive him of his constitutional rights.

[1] In this state the constitution itself makes a direct grant of police power to municipalities. (Const., art. XI, sec. 11.) The power so conferred is as broad as that possessed by the legislature itself, subject to the two exceptions that its exercise by any city must be confined to the municipality and must not conflict with the general laws of the state. (*Odd Fellows' Cemetery Assn.* v. *San Francisco,* 140 Cal. 226, 230, [73 Pac. 987].) The exercise of this power is not limited, to the regulation of such things as already have become nuisances or have been declared such by the judgment of a court. [2] A city's power to prohibit or regulate not only includes nuisances, but extends to everything expedient for the preservation of the safety, health, or comfort of the city's inhabitants. (*Odd Fellows' Cemetery Assn.* v. *San Francisco, supra; Ex parte Quong Wo*, 161 Cal. 220, [118 Pac. 714].)

[3] A municipality has power, by ordinance, to divide its territorial limits into business and residence districts, and prohibit in the residence district the maintenance of any corral wherein mules and burros are kept for hire. It is a matter of common knowledge that such corrals, by reason of the excrement from the animals, the dropping of which to some extent is unavoidable, are not only rife

with offensive foul-smelling odors, but are breeding places for germ-laden, disease-bearing flies, and pestilential ; vermin. Not only this, but we know of no heaven-sent Maxim to invent a silencer for this brute, that one beholding him, neck outstretched and jaws distended wide, could persuade himself that he but heard from the depths of the beast's crimson-coated cavern

"... a sound so fine there's nothing lives
'Twixt it and silence."

We fear that, until nature evolves the whispering burro or man invents some harmless but effective mule-muffler, we shall oft "in the dead vast and middle of the night," even in such corrals as appellant's, kept "in a cleanly, wholesome, and sanitary manner," hear the loud, discordant bray of this sociable but shrill-toned friend of man, filling the air "with barbarous dissonance," and drowning even that shout that

"... tore hell's concave, and beyond
Frightened the reign of Chaos and old Night."

It should not be a matter for surprise, therefore, that the noisome smell from these animals and their loud, strident cacophonies bring the keeping of them in a populous city or town "within the legal notion of a nuisance." (*Ex parte Foote,* 70 Ark. 12, [91 Am. St. Rep. 63, 65 S. W. 706].) See, also, *In re Linehan,* 72 Cal. 114, [13 Pac. 170] ; *Ex parte Lacey,* 108 Cal. 326, [49 Am. St. Rep. 93, 38 L. R. A. 640, 41 Pac. 411] ; *Ashbrook* v. *Commonwealth,* 1 Bush (Ky.), 139, 89 Am. Dec. 616.)

[4] Occupations which, by the noise made in their pursuit, or the odors they engender, are offensive to the senses, may be interdicted by law, in the midst of populous communities, on the general and rational principle that every person ought so to use his property as not to injure his neighbors, and that private interests must be made subservient to the general interest of the community. For the purpose of regulating such occupations, a city has the power to divide its territorial limits into a residence and a business district, and prohibit the obnoxious occupation within the former. (*Ex parte Moynier,* 65 Cal. 33, [2 Pac. 728] ; *In re Hang Kie,* 69 Cal. 149, [10 Pac. 327] ; *Ex parte Quong Wo,* 161 Cal. 220, [118 Pac. 714] ; *In re Montgomery,* 163 Cal. 457, [Ann. Cas. 1914A, 130, 125 Pac.

1070]; *Ex parte Hadacheck,* 165 Cal. 416, [L. R. A. 1916B, 1248, 132 Pac. 584].)

[5] The ordinance is not arbitrary nor unjustly discriminatory. It operates alike upon all persons similarly situated within the confines of the city. All have the same rights, and all are subject to the same burdens. It matters not that this particular ordinance is aimed only at those who keep such animals for hire. The record shows that there is another city ordinance that regulates the keeping of such animals for purposes other than hire. Moreover, there is a greater reason for regulating, or even prohibiting, in populous residential communities, the keeping of such animals for hire, than there is for regulating or prohibiting their keeping for domestic use or for purposes other than hire. He who keeps a horse, mule, or burro for his own private use, if he does not keep it in a public corral or other place that is equally subject to the most stringent regulation, such as a livery-stable, for instance, must keep it in a private stable or corral. But the owner of a private stable or corral, for his own comfort and welfare has a strong and compelling motive for maintaining the place with due regard to his own, and thus indirectly his neighbors', health and well-being.

The ordinance does not absolutely forbid the maintenance of a corral in the business district, but provides that no corral of the kind interdicted by it shall be maintained in the business section without a permit from the city trustees. Appellant claims that the ordinance does not merely regulate, but that, by requiring a permit for the maintenance of such a corral in the business district, it confers upon the trustees a power that is susceptible of abuse, that the applicant for a permit may be unfairly discriminated against, and that, therefore, in the practical application of the trustee's discriminatory power, the right to maintain such a corral in any part of the city may be unjustly prohibited. We cannot subscribe to this criticism of the ordinance. The proposition that a man has a natural, innate, inviolate, common-law, or constitutional right to maintain, in a populous community, a place where foul-smelling, loud-braying animals are kept, has no foundation in reason or authority. (*In re Flaherty,* 105 Cal. 566, [27 L. R. A. 529, 38 Pac. 981].) If, therefore, it is not a right that may not be

entirely suppressed, it may be regulated as the law-making power may determine. **[6]** The fact that permission to maintain, in the business district, a corral for horses, mules, or burros may be granted by the city trustees to one person and denied to another does not impair any constitutional right. Such discrimination might well be made where one person desired to keep two mules, or two burros, and another fifty; or where one desired to establish a corral in the heart of the business section, and another nearer the confines of that section of the city; or where one may be known to keep his corral in a filthy condition, and another has established a reputation for good order and cleanliness. The question in each case is whether the establishing of a corral is likely, in the hands of the applicant, to be a nuisance to the neighborhood; and in the absence of any evidence to the contrary, we must assume that the discrimination will be made with due regard to the interests of the applicant and the public, and upon conditions that will accord with the health and comfort of the community. It has been held by some of the courts of this country to be contrary to the spirit of the American institutions to vest this dispensing power in the hands of a single individual, and by others that such authority cannot be delegated to the adjoining lot owners; but the power to delegate such discrimination to the town trustees, as in this case, or to a board appointed for that purpose, is sustained by the great weight of authority. (*Fischer* v. *St. Louis*, 194 U. S. 361, [48 L. Ed. 1018, 24 Sup. Ct. Rep. 673, see, also, Rose's U. S. Notes]; *In re Flaherty, supra; Ex parte Fiske*, 72 Cal. 125, [13 Pac. 310]; *City of Newton* v. *Joyce*, 166 Mass. 83, [55 Am. St. Rep. 385, 44 N. E. 116]; *Quincy* v. *Kennard*, 151 Mass. 563, [24 N. E. 860].)

There is absolutely nothing to indicate that the ordinance was intended in any of its features to operate peculiarly against appellant or against any other particular person or persons or class of persons. It is fair on its face, applying equally and uniformly to all engaged in keeping, in corrals, horses, mules, or burros for hire; and it is not to be presumed that the trustees will exercise their power wantonly or for purposes of oppression, or accord permission to social or political favorites and deny it to others.

The fact that appellant may have kept his corral as clean as is possible in such cases, and has carried on his business in the most approved manner, is not material. (*City of Burlington* v. *Stockwell*, 5 Kan. App. 569, [47 Pac. 988].) Nor would it be of any consequence that it would be possible for one or more such corrals to be maintained without appreciable risk of peril to the health or safety of the community. It is almost unavoidable that some noxious odors shall emanate from, and some disease-bearing flies breed in, some if not all such places—to say nothing of the unconstrainable, raucous sounds. It is enough that there are offensive noises and odors intolerably obnoxious to the senses of hearing and smelling. Moreover, the fact that in two corrals, in the vicinity of appellant's, there was "an accumulation of manure and other filthy substances of various kinds, generating noxious odors and breeding and attracting flies and other vermin," was sufficient to justify the passage of such an ordinance as that in question here. [7] The fact that appellant's corral was kept in a cleanly and sanitary manner affords no reason why he should be specially exempt from the provisions of an ordinance designed to regulate a business which, as conducted by some persons at least, is fraught with peril to the community's comfort, if not its very health. [8] Primarily, it is for the city's legislative body, clothed with police power by direct grant from the constitution, to determine when and what regulations are essential; and its determination in this regard, in view of its better knowledge of all the circumstances and the presumption that it is acting with due regard for the rights of all parties, will not be disturbed by the courts, unless it plainly can be seen that the regulation has no relation to the protection of health, safety, comfort, or well-being of the community, but is a clear invasion of personal or property rights under the guise of police regulation. (*Ex parte Quong Wo*, 161 Cal. 220, [118 Pac. 714]; *Ex parte Hadacheck, supra; Pierce Oil Corp.* v. *Hope*, 248 U. S. 498, [63 L. Ed. 381, 39 Sup. Ct. Rep. 172].) [9] Whenever a thing or act is of such a nature that it may become a nuisance, or may be injurious to the public health or obnoxious to the comfort of a community, if not suppressed or regulated, the legislative body, in the exercise of

its police powers, may make and enforce ordinances to regulate or prohibit such act or thing, although it may never have been obnoxious or injurious in the past. (*Odd Fellows' Cemetery Assn.* v. *San Francisco,* 140 Cal. 226, 230, [73 Pac. 987].)

We see no force in any of appellant's objections to the ordinance.

Judgment affirmed.

Sloane, J., and Thomas, J., concurred.