[Crim. No. 874. Second Appellate District, Division Two.—July 31, 1922.]

In the Matter of the Application of MRS. FRANK MATHEWS for a Writ of Habeas Corpus.

[1] MUNICIPAL CORPORATIONS — KEEPING OF GOATS — CONSTITUTIONAL LAW.—Under section 11 of article XI of the constitution, a city possesses the police power to prohibit the keeping of goats nearer than fifty feet distant of a dwelling-house.

[2] ID.—POLICE POWER—ANTICIPATED NUISANCES.—In the exercise of its police power a city may regulate or even prohibit not only nuisances which have already been declared such, but may use every reasonable expedient for the preservation of the safety and comfort of the city's inhabitants to protect them from those conditions which may reasonably be anticipated to result.

[3] ID.—REGULATION OF KEEPING OF GOATS—REASONABLENESS OF ORDINANCE.—In a *habeas corpus* proceeding after conviction of violation of the provision of a municipal ordinance prohibiting the keeping of two goats nearer than fifty feet of a dwelling, the court is not permitted to determine the reasonableness of other provisions of the ordinance prohibiting the keeping of more goats at greater distances, the distances varying in proportion to the number of goats kept, since such provisions are not involved.

APPLICATION for a Writ of Habeas Corpus to secure release after conviction of violation of city ordinance. Denied.

The facts are stated in the opinion of the court.

J. G. Rossiter and B. M. Marble for Petitioner.

J. H. Howard and Leonard L. Riccardi for Respondent.

CRAIG, J.—The city of Pasadena enacted an ordinance regulating the keeping of goats. The petitioner was charged and convicted with having violated section 14 (c) of the ordinance. After sentence she petitioned this court, asking us to hold the section involved void as violative

---

1. Power of municipal corporations to regulate the keeping of animals, notes, (hogs) 9 Ann. Cas. 179; (poultry) 14 Ann. Cas. 1003; (cattle) Ann. Cas. 1917E, 929; 38 L. R. A. 332; 39 L. R. A. (N. S.) 266.

of the state constitution. Upon the hearing in this court both sides introduced evidence principally intended to inform us upon the habits, culture, and characteristics of goats as well as concerning the flies, which some of the witnesses say accompany them.

[1] We find no conflict between the provision of the ordinance involved in the attack by the petitioner and the code definition of a nuisance or with section 11 of article XI of the state constitution. There is no constitutional question involved in this proceeding which has not been, at least in principle, passed upon in this jurisdiction. The city of Pasadena possesses the police power by virtue of article XI, section 11, of the state constitution. The city may prohibit or regulate whatever is reasonably involved in the preservation of the health or comfort of its inhabitants. (*Odd Fellows' Cemetery Assn.* v. *San Francisco,* 140 Cal. 226 [73 Pac. 987].) That the keeping of animals in a municipality *is* a proper subject for police regulation is too well established to be open to question. (*In re Linehan,* 72 Cal. 114 [13 Pac. 170]; *Boyd* v. *City of Sierra Madre,* 41 Cal. App. 520 [183 Pac. 230]; *Fischer* v. *St. Louis,* 194 U. S. 361 [48 L. Ed. 1018, 24 Sup. Ct. Rep. 673, see, also, Rose's U. S. Notes].) [2] In the exercise of its police power the city may regulate or even prohibit not only nuisances which have already been declared such, but may use every reasonable expedient for the preservation of the safety and comfort of the city's inhabitants to protect them from those conditions which may reasonably be anticipated to result. (*Boyd* v. *City of Sierra Madre, supra; Ex parte Quong Wo,* 161 Cal. 220 [181 Pac. 714].) In the regulation of such occupations as are capable of being offensive or injurious to the public, the zoning of a city so as to forbid the carrying on in certain localities of those which are objectionable has received the sanction of many judicial decisions. (*Ex parte Moynier,* 65 Cal. 33 [2 Pac. 728]; *In re Hang Kie,* 69 Cal. 149 [10 Pac. 327]; *In re Montgomery,* 163 Cal. 457 [Ann. Cas. 1914A, 130, 125 Pac. 1070]; *Boyd* v. *City of Sierra Madre, supra.*) Nor is the city limited to the regulation of such occupations within a particular district, but may extend its inhibitions throughout the city. (*In re Linehan, supra; Fischer* v. *St. Louis, supra.*) *McKnight* v. *City of Toronto,* 3 Ont. Rep. 284,

is a case where the same method of zoning was upheld as
the one in the Pasadena ordinance. In that case the
by-law prohibited the keeping of one cow at a less dis-
tance than 40 feet or two cows at a less distance than 80
feet from any dwelling-house. This enactment was viewed
as reasonable and valid.

The same decision is applicable to another aspect of the
case at bar. It was there contended that the by-law, be-
cause of being so general as to include the owner of cows,
in that particular attempted to make that a nuisance by
legislation which could not be so. The court held that,
conceding the claim to be good, it would not set the sec-
tion of the by-law aside because plaintiff was not being
proceeded against as one who was keeping cows too near
his own dwelling-house. In this proceeding, the reason-
ableness and validity of that part of section 14 (c), which
prohibits the keeping of goats nearer than fifty feet dis-
tant from a dwelling-house, is not in question.

The petitioner, Mrs. Mathews, testified that she has kept
on an average of 12 goats in her corral, which occupies a
space 50 feet square, and that her nearest neighbor is within
50 feet of the corral. There is a sharp conflict in the state-
ments of the witnesses concerning the odor from goats and
the noise made by them. The petitioner and some of her
witnesses state that the female goat makes no noise. Ac-
cording to F. F. Heintz, the publisher of a goat magazine,
and called as a witness for the petitioner, the female goat
makes no noise if in a comfortable place and one to which
it has become accustomed. On the other hand, the four
witnesses for the respondent, all of whom live close to the
Mathews place, declare that the noise made by the goats is
extremely annoying. One said it is "a terrible noise when
giving birth to kids." Another, that the goats stamp, walk,
jump, and bleat in the night; and another that they bleat
all the time; another that they made a noise, which the
witness describes as "Baa," to such an extent that she
was forced to go into the house while visiting a near neigh-
bor to the Mathews.

Concerning the smell, we have the same diversity in the
testimony. Some of the witnesses for the petitioner insist
that there is no smell from the female goat, except, per-
haps, when she perspires, and that then it is not seriously

objectionable. The witness, L. W. Odell, called for the petitioner, testified that he noticed an odor of the goats on the Mathews place and that he smelled it before he went on the lot not less than 250 feet away. Witnesses for the respondent claim the stench from the goat corrals of Mrs. Mathews and another neighbor to be "something fierce" and so bad that one was forced to keep the windows closed on the side toward Mrs. Mathews' goats; another witness stated that this odor could be smelled a distance of two blocks, which was stipulated to be about 600 feet. This statement was corroborated by a second witness.

Concerning the flies, the respondent's witnesses generally testified that the screen doors of neighbors were black with flies. On the other hand, expert witnesses of the petitioner say that in their experience goats do not especially attract flies.

It is unnecessary to quote the testimony of the various witnesses in detail or to a greater extent than we have done. It seems clear that the conflict in the evidence is direct, if anything, preponderating in favor of the respondent's contentions.

The witness Heintz says that if a goat corral is kept as required by other provisions of the ordinance there will be no offensive odors; that if made comfortable and to feel at home goats make no noise. Mrs. Mathews states in effect that her corral is kept perfectly clean and in every way as required by law, and that the goats are provided with all of the comforts which the ordinary female goat may demand, and yet apparently truthful witnesses testify that the odors are "terrible"; the noise so great as to drive neighbors into their closed houses, and that the flies gather in clouds. Surely with this conflict of evidence the judiciary will not say that the municipal legislative body has acted without reason and has abused its discretion in enacting an ordinance the language of which clearly indicates that the municipal legislators believed that the keeping of goats demanded regulation and that the ordinance passed was appropriate and essential to the public comfort and the welfare of the citizens. It cannot be doubted that reasonable men upon a consideration of the facts in the instant case might well rationally conclude that the enforcement of the statute would tend *in some appreciable degree*

to promote or preserve public comfort or welfare. If so, under the rule laid down in *In re Miller*, 162 Cal. 687 [124 Pac. 427], the law must be recognized as a legal exercise of the police power, "although other reasonable persons might take a different view." Courts would be arrogating to themselves a legitimate function of the legislature if they should interfere with the exercise of legislative discretion in any case where it does not clearly appear that such discretion has been unreasonably exercised. (*Laurel Hill Cemetery* v. *San Francisco*, 152 Cal. 464 [14 Ann. Cas. 1080, 27 L. R. A. (N. S.) 260, 93 Pac. 70].)

The petitioner apparently has much reliance upon the showing made that her corral and barn are clean and that it is possible to maintain such places with little or no danger to the safety or comfort of the community. In *Boyd* v. *City of Sierra Madre, supra,* the court made use of this language: "Nor would it be of any consequence that it would be possible for one or more corrals to be maintained without appreciable risk of peril to the health or safety of the community. . . . The fact that appellant's corral was kept in a cleanly and sanitary manner affords no reason why he should be specially exempt from the provisions of an ordinance designed to regulate a business which, as conducted by some persons at least, is fraught with peril to the community's comfort, if not its very health."

Petitioner earnestly contends that inasmuch as subdivisions (b), (c), and (d) of section 5 of the ordinance provide for the cleaning of the goat corrals, etc., and that as her experts have testified that if such directions were to be carried out no objectionable odors could result, the provision of subdivision (c) of section 14 is unnecessary to public welfare and, therefore, unreasonable and unconstitutional. This argument cannot be sustained. In the first place, the other subdivisions to which reference is made only provide for the cleanliness of the corral and the use of disinfectants. No provision is contained in them for the comfort of the animals without which it is a fair conclusion from the testimony of petitioner's own expert witnesses that they would bleat and stamp about with their feet; while others say in effect that the noise they make is quite unbearable. A chorus of twelve discordant and

petulant bleats may well carry a considerable distance. No expert has informed the court concerning the carrying powers of the voices of female goats or as to their melody or whether or not they blend in harmony, but from the deleterious effects testified to have been produced we must conclude that the net result of such "strident cacophonies" would make the authors thereof as much proper subject for regulation as the burro or the cow.

In the second place, if a section of this ordinance standing alone is calculated to insure the comfort and convenience of the public and where need exists for such a safeguard that section cannot be regarded as unreasonable and an unnecessary infringement of the rights of citizens merely because another section has also through separate provisions provided another redress. If counsel's argument were to obtain and section (c) were to be declared void on account of the provisions of subdivisions (b), (c), and (d) of section 5, in another suit involving a violation of the other sections they might with equal right and reason be declared unconstitutional because of the fact that subdivision (c) is in itself a complete safeguard of the public interest, for it might well be argued that if goat corrals were kept at a distance at from 50 to 1,000 feet from any dwelling-house no injury would result even though not cleaned daily and although some odors result.

[3] Perhaps the most spirited attack upon the subdivision of the ordinance is based upon an argument that it is unreasonable on account of the fact that under it one or two goats must be kept 50 feet from any dwelling-house; three or four goats 100 feet; five goats 500 feet, and six goats 1,000 feet, whereas it is claimed the menace to the public does not grow in the proportion that the distances named increase as related to the number of goats kept. It is argued that the law as to the 100, 300, and 1,000 feet provisions is unreasonable and oppressive and in no way tending to protect the health, safety, or comfort of the occupants of adjoining dwelling-houses. The evidence shows that the petitioner has been keeping twelve or more goats continually and that she kept them within 50 feet of the nearest dwelling of a neighbor. It thus clearly appears that she unquestionably violated the provision of the section to the effect that two goats must not be kept

nearer than 50 feet of a dwelling. The provisions as to 100, 300, and 1,000 feet are therefore not involved and we are not permitted to determine whether or not they are unreasonable, etc. If petitioner had maintained her goats at a distance of 999 feet from the nearest dwelling and in consequence had been convicted of a violation of this section of the ordinance, a decision as to the reasonableness of the 1,000 foot provision would be appropriate and necessary. As the facts are, we can only determine whether or not a regulation prohibiting goats being kept closer than 50 feet to the nearest dwelling is a reasonable enactment. We have no hesitation in holding that the city council might logically regard such a regulation as tending in an appreciable degree to promote the general welfare and comfort. The writ is discharged and the prisoner remanded.

Finlayson, P. J., and Works, J., concurred.