THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ARTHUR
COOK, Appellant.

Fourth Department, March 16, 1927.

Crimes — maintenance of public nuisance in violation of Penal Law,
§§ 1530 and 1532 — conviction based on sale of intoxicating liquor in vio-
lation of National Prohibition Act — selling intoxicating liquor illegally
in home unobserved and unknown to outsiders does not constitute viola-
tion of said sections.

The defendant was improperly convicted of maintaining a public nuisance in
violation of sections 1530 and 1532 of the Penal Law, on a charge that he
illegally sold intoxicating liquor. The selling of intoxicating liquor in the
home of the defendant in violation of the National Prohibition Act to several
persons in the presence of other persons but within doors, unobserved by persons
outside the house and unaccompanied by any noise, violence or unseemly con-
duct, does not constitute a public nuisance in violation of said sections.

SEARS and CROUCH, JJ., dissent, with opinion.

APPEAL by the defendant, Arthur Cook, from a judgment of
the County Court of the county of Steuben, rendered on the 22d
day of July, 1926, convicting him of the crime of violating section
1532 of the Penal Law.

*Whiteman & Hill [Floyd E. Whiteman* of counsel], for the
appellant.

*Guy W. Cheney, District Attorney,* for the respondent.

TAYLOR, J. Appellant has been convicted in the County Court
of Steuben county of maintaining a public nuisance under sections
1530 and 1532 of the Penal Law, in that in a house occupied by him
in the village of Canisteo, on August 30, 1925, he conducted a
place where intoxicating liquor was sold by him to various persons,
in violation of the National Prohibition Act. The indictment
covered other details, as, to some extent, did the proof. But on
the argument in this court counsel for both parties announced that
they desired the court to pass upon the principal question only,
viz., was selling intoxicating liquor in the home of appellant on
the date mentioned, to several persons in the presence of other
persons, but within doors, unobserved by persons outside the house
and unaccompanied by any noise or violent or unseemly conduct,
a crime under sections 1530 and 1532 of the Penal Law? Believable
testimony was presented to the effect that such selling took place
in the presence of about twelve persons.

A " public nuisance " consists in " Unlawfully doing an act
or omitting to perform a duty, which act or omission: 1. Annoys,
injures or endangers the comfort, repose, health or safety of any

considerable number of persons; or, 2. Offends public decency."
(Penal Law, § 1530.) "A person who commits or maintains a
public nuisance  *  *  *  is guilty of a misdemeanor." (Penal
Law, § 1532.)

Section 21 of title 2 of the National Prohibition Act, also known
as the Volstead Act (41 U. S. Stat. at Large, 314, chap. 85), pro-
vides, in part, as follows: " Any room, house, building, boat, vehicle,
structure, or place where intoxicating liquor is manufactured, sold,
kept, or bartered in violation of this title, and all intoxicating liquor
and property kept and used in maintaining the same, is hereby
declared to be a common nuisance, and any person who maintains
such a common nuisance shall be guilty of a misdemeanor," etc.

The gist of appellant's contention is that he cannot be convicted
under the statute invoked, because no act or omission is criminal
under the laws of the State of New York, unless so declared by a
State statute (Penal Law, § 22); that selling intoxicating liquor is
not defined as a statutory crime in New York State; and that the
transaction proved to have taken place in appellant's home, viewed
in all aspects, did not amount to a violation of section 1530 of the
Penal Law.  The People contend, not that the conviction of
appellant can rest upon sections 1530 and 1532 of the Penal Law
merely because the sale of intoxicating liquor is defined as a nuisance
in the National Prohibition Law, but that maintaining a room,
etc., in violation of the Federal law, under all the circumstances
presented, created a public nuisance under the State enactment.

The use of the words " considerable number " and " public "
in the New York statute indicates that the acts and omissions
comprehended must have a general effect, must interfere dis-
agreeably with a substantial number of persons who are sufficiently
sensitive to be at least annoyed or to have their sense of decency
offended.  " Decency " is defined in Webster's New International
Dictionary as " quality or state of being decent, suitable, or becom-
ing  *  *  *, freedom from obscenity or indecorum."

" A nuisance is said to be a public one, if it affects the rights
enjoyed by citizens as part of the public.  *Knox* v. *New York*,
55 Barb. (N. Y.) 404; *King* v. *Morris, etc., R. R. Co.,* 18 N. J. Eq.
397.  It has been defined as public when it affects a place where
the public has a legal right to go, or where the public is likely to
come within its influence.  *Burlington* v. *Stockwell,* 5 Kan. App.
569, 47 Pac. 988.  It has been laid down as a general rule that
every unlawful use by a person of his own property in such a way
as to cause material annoyance to other persons or to the public
generally constitutes a nuisance.  *Baltimore, etc., R. R. Co.* v. *Fifth
Baptist Church,* 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739; *Davis*

v. *Sawyer,* 133 Mass. 289, 43 Am. Rep. 519." ( *U. S.* v. *Reisen-weber,* 288 Fed. 520.)

" It is admittedly a difficult question to tell whether a nuisance is so general in its character — that is, affects a sufficient number of persons — to justify its characterization as a ' public nuisance.' * * * No doubt a nuisance is public if it affects * * * any considerable number of persons. * * * It seems to be sufficient to constitute acts or conditions a public nuisance, if injury and annoyance are occasioned to such part of the public as come in contact therewith." (20 R. C. L. 385, § 8.)

There are many different human activities which may fall within the scope of section 1530 of the Penal Law. Whether or not a particular act or transaction in a given instance is thus comprehended may be a question of law or of fact. Certain results are stated in the section to create a public nuisance. No attempt is made to define, even generally, the acts or omissions which bring about the specified results. But a more accurate and detailed definition in the act of the crime named is not essential. (*Burk* v. *State,* 27 Ind. 430.)

A place where intoxicating liquor is sold is not a nuisance *per se,* although a disorderly liquor saloon may be a public nuisance. (29 Cyc. 1180.)

Selling intoxicating liquor is not, under the Federal law, a crime involving moral turpitude. (40 A. L. R. 1048.) But the commission of a crime even involving moral turpitude does not *ipso facto* create a public nuisance. It is easy to conceive of the committing of a larceny or a burglary or other serious crimes under circumstances such that the " public " is not annoyed or injured or their sense of decency offended.

The selling of intoxicating liquor never has been and is not now a crime at common law in New York State. (1 Bishop Crim. Law [9th ed.], §§ 505, 1113; *Wynehamer* v. *People,* 13 N. Y. 378; *Commonwealth* v. *McDonough,* 13 Allen [Mass.], 581.)

Omitting mention of prior statutes, the Liquor Tax Law (Laws of 1909, chap. 39, § 36, and amendments) made unlicensed liquor selling a crime. After the ratification of the Eighteenth Amendment to the United States Constitution our Liquor Tax Law was amended (Laws of 1920, chap. 911) in an attempt to conform to said constitutional provisions. This law was repealed by chapter 155 of the Laws of 1921 (the Mullan-Gage Law), known as the State Prohibition Act, which also made unlicensed liquor selling a crime (Penal Law, § 1212, as added by said act) and (in Penal Law, § 1214-g, as added by said act) made the maintenance of a room, etc., where intoxicating liquor was illegally sold a common nuisance.

This law was repealed by chapter 871 of the Laws of 1923, known as the Cuvillier Act, since which time there has been no New York statute either making liquor selling a crime or making the maintenance of a place for so doing a nuisance.

Thus it appears that in repealing the Mullan-Gage Law, New York State elected not to enforce the Volstead Act concurrently with the Federal government. Through its Legislature the State said: " We decline to continue making the selling of intoxicating liquor a crime under our laws; we decline to say any longer that a place where intoxicating liquor is sold is a common nuisance; from now we leave all that to the Federal government and its courts."

The State courts have no jurisdiction over crimes committed exclusively against the United States. (Fed. Jud. Code [36 U. S. Stat. at Large, 1160], § 256; now U. S. Code, tit. 28, § 371; *Hebert v. Louisiana,* 272 U. S. 312.) In the instant case the State court had jurisdiction only if the acts charged, including the selling of intoxicating liquor, created a public nuisance under sections 1530 and 1532 of the Penal Law.

It comes to this in the instant case. At most, the defendant sold intoxicating liquor to some of his friends and acquaintances in his own home, in the presence of other people. It was stipulated on the argument in this court that no disturbance was created, and that the outside public was not annoyed or even aware of what was going on in appellant's home. There is no proof that any of " the public " inside the building had their sense of decency offended, or experienced anything specified in section 1530 of the Penal Law. Hence, no " public nuisance " was created. And it follows that the liquor selling could not have been even a concurring proximate cause of something which never was brought about.

It has been suggested that in a place where intoxicating liquor is sold (illegally under the Federal law) disturbances are likely to occur, raids are likely to be made, there are ever present possibilities of disorder which will bring about some of the results creating a " public nuisance " under the State statute. As to that contention, it is sufficient to say that the time has not come when a man may be convicted of crime in the State of New York because he is found to have done some act which may be followed by some other act which results in a violation of a penal statute.

The question before us has been fully discussed in a Special Term opinion in *People* v. *Conti* (127 Misc. 244; followed in *People* v. *Wade,* Id. 593, 594). The conclusion there reached was that an indictment charging that substantially the same acts as are here

8

involved amounted to a violation of section 1530 of the Penal Law, should be dismissed.

Cases like *People* v. *Curtis* (152 App. Div. 372; affd., 206 N. Y. 747); *People* v. *Hoffman* (118 App. Div. 862; affd., 189 N. Y. 561), and *People* v. *Kingston* (177 App. Div. 376) are not in point. In those cases the acts furnishing the basis for the finding that a public nuisance was maintained involved crimes under the Penal Law, and under the facts in each case the maintaining of a " public nuisance " was beyond doubt.

*State* v. *Ayers* (49 Oreg. 61; 88 Pac. 653); *State* v. *DeWolfe* (67 Neb. 321; 93 N. W. 746) and *Enright* v. *Commonwealth* (189 Ky. 497) are distinguishable. In the last named case the acts charged (receiving bets on horse races) constituted a statutory crime in Kentucky, and had been admittedly continued from day to day and " under constant repetition became a public nuisance." In the two other cases the acts charged were said to be indictable as nuisances under the common law. Whereas, in New York State, selling intoxicating liquor was never an indictable offense at common law, the portion of the Mullan-Gage Act making (in 1921) such selling a nuisance was repealed in 1923, and in the instant case we are not dealing with a repetition of liquor selling which scandalized " the public."

This court has held ( *U. S.* v. *Sumner*, 216 App. Div. 782) that the Supreme Court of this State may enjoin as a public nuisance the maintenance of a place where liquor is sold in violation of the Volstead Act. But that was a civil action, an action in equity cognizable in the State court under section 22 of title 2 of the National Prohibition Act (41 U. S. Stat. at Large, 314).

During the charge to the jury the learned trial court said:

" The only proposition which you have in this case is to determine * * * whether or not this defendant did, on the 30th day of August, 1925, in the Village of Canisteo, in this county, traffic unlawfully in intoxicating liquors. If he did, then under the law of this State, as I understand it, he has violated this law. * * *

" The law as it seems to stand in this State * * * is this, Gentlemen: It is fundamental that the illegal traffic in intoxicating liquors is a public nuisance *per se*, that is, of itself. It is a fact to be proven to your satisfaction beyond a reasonable doubt that this defendant was engaged in the illegal traffic of intoxicating liquors that constitutes a public nuisance and a violation of the statute upon which he is indicted.

" The Volstead Act or Volstead Law, of its own force, constitutes in any place in the State of New York where intoxicating liquor is sold a common nuisance. * * *

" In this case, Gentlemen, it is not a violation, it is not a prosecution of this defendant of a violation of the Volstead Law or a violation of the Eighteenth Amendment to the Constitution, or a violation of any so-called liquor law. He is being tried here for the commission of an unlawful act which it is claimed by the prosecution constitutes a nuisance and a wrongful act, and that is a violation of section 1532 of the Penal Law so defining public nuisances under section 1530. * * *

" If you find the prosecution has satisfied you under the rules I have already stated that he did commit the act which it is alleged he did do or the acts charged in the indictment, your verdict will be one of guilty."

Thus the court advised the jury that if they found that appellant had sold intoxicating liquor on the date in question, he must be convicted. Taking into consideration either habitual or repeated selling or the reputation of the place was not made essential. Objections were duly made, exceptions taken and requests to charge made. If our conception of the law as we have stated it is correct, this was error. The wrong forum has been selected. The acts charged, if a crime, violated the Federal law and were punishable by the Federal court only.

For the reasons given the judgment appealed from should be reversed on the law, the indictment dismissed and, so far as the accusation under consideration is concerned, the appellant should be discharged.

Present — HUBBS, P. J., SEARS, CROUCH, TAYLOR and SAWYER, JJ. All concur, except SEARS and CROUCH, JJ., who dissent in an opinion by SEARS, J., and vote for affirmance.

SEARS, J. (dissenting). I. To constitute a public nuisance under section 1530 of the Penal Law the act or omission complained of must have been done " unlawfully " and it must have led to one of the results mentioned in the four subdivisions of that section.

a. Was the act here in question done " unlawfully? "

In the absence of any language to indicate a contrary intent, I think the word " unlawfully " in our statute must be construed as referring to the body of law which is binding upon the people and courts of New York as a separate sovereignty.

" We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject-matter within the same territory." ( *U. S.* v. *Lanza,* 260 U. S. 377, 382.)

The Federal sovereignty, by the National Prohibition Act (41 U. S. Stat. at Large, 305, chap. 85), also known as the Volstead Act, has dealt with the subject of prohibition. The State sover-

eignty declines to deal with it. So far as its criminal provisions are concerned, the National Prohibition Act is no part of the law of this State as a separate sovereignty. So far, however, as its provisions are enforcible by civil process, it is a part of the law of this State. (*U. S.* v. *Sumner*, 216 App. Div. 782, affg. 125 Misc. 658; *U. S.* v. *Myers*, 215 App. Div. 624; *Broadway C. S. Corp.* v. *Buchanan Rest. Co.*, 218 id. 594; *Claflin* v. *Houseman*, 93 U. S. 130.) Back of all that, however, is the Constitution of the United States. The act of defendant in selling intoxicating liquor was prohibited by the Eighteenth Amendment to the United State Constitution. It was, therefore, prohibited by the law of New York. (*National Prohibition Cases* [*Rhode Island* v. *Palmer*], 253 U. S. 350, 386, conclusion No. 6.) In *People* v. *Otis* (235 N. Y. 421, 423) it is said: " The possession of intoxicating liquor is now unlawful. Liquor so possessed may not be sold, transported or delivered to any one."

I conclude that the defendant in selling intoxicating beverages did an act " unlawfully " within the language of section 1530 of the Penal Law, although the act was not *per se* criminal under the State law.

b. Did that act lead or tend to lead to any of the results mentioned in the four subdivisions of section 1530 of the Penal Law?

The evidence in the case seems to render subdivisions 1, 3 and 4 inapplicable. We have to consider, then, the question as it arises under subdivision 2. Did defendant's act offend or tend to offend " public decency? "

As subdivisions 1, 3 and 4 embrace injuries to comfort, health and safety, so subdivision 2 contemplates injuries to morality. " The injury may be to person or property, to health, comfort, safety or morality." (*Melker* v. *City of New York*, 190 N. Y. 481, 488 ) Among other definitions of the word " decency " are " moral fitness " (Funk & Wagnalls' New Standard Dictionary) and " decent or orderly condition of civil or social life " (Murray's New English Dictionary). Broadly speaking, public decency means public morality in relation to orderly conditions of civil or social life. What offends public morality at any particular period is largely determined by the views of the entire community prevailing at that time. It would not be true to say that reverence of all law is a part of present prevailing morality. But I feel safe in asserting that respect for at least so much of the law as is embodied in the Constitutions,— State or Federal, is a part of the public morality of the people of this State and so included in the term " public decency."

The treatment of the prohibition question by our State Legislature is confirmatory rather than destructive of this view.

The Eighteenth Amendment to the United States Constitution was ratified by this State in 1919, subsequent to the due ratification thereof by the necessary three-fourths of the several States. (See N. Y. Sen. Jour. 1919, pp. 108–113; N. Y. Assem. Jour. 1919, pp. 119–123, 163, 164; U. S. Const. art. 5; 40 U. S. Stat. at Large, 1941; *Dillon* v. *Gloss*, 256 U. S. 368, 376, 377.) Prohibition of traffic in intoxicating liquor thus became a part of the public policy of this State.

In 1920 this State enacted a law defining intoxicating liquors and non-intoxicating beverages (Laws of 1920, chap. 911), evidently upon the theory that the Eighteenth Amendment reserved to the States equal concurrent power with the Congress to define an intoxicant. The decision of the United States Supreme Court in *Rhode Island* v. *Palmer* (253 U. S. 350) rendered such State statutory definition inoperative by holding that the definition contained in the Volstead Act was binding upon the States.

Thereafter the Mullan-Gage Law or the State Prohibition Act was enacted. (Laws of 1921, chap. 155, adding to Penal Law, art. 113.) At the same time another Mullan-Gage Law, known as the State Prohibition Enforcement Act (Laws of 1921, chap. 156, adding to Code Crim. Proc. §§ 11-b, 117-a, 802-b), was enacted.

On January 3, 1923, the Governor dealt with the subject in his annual message. (28 State Dept. Rep. 513.) He recommended the passage of a resolution requesting "that the legislative machinery at Washington be set in motion immediately to bring about an amendment [to the National Prohibition Act] that will permit light wines and beer under the careful restrictions set forth in the New York State Act of 1920."

That Legislature repealed the Mullan-Gage Law, known as the State Prohibition Act (Laws of 1921, chap. 155) and the Mullan-Gage Law known as the State Prohibition Enforcement Act (Laws of 1921, chap. 156) in 1923 (Laws of 1923, chap. 871), and further memorialized Congress along the lines suggested by the Governor. (See N. Y. Sen. Jour. 1923, pp. 215, 216; N. Y. Assem. Jour. 1923, pp. 318, 385.)

On January 2, 1924, the Governor in his annual message again touched the subject. (30 State Dept. Rep. 513.) He referred to the resolution passed by the preceding Legislature and then said: " Subsequently the Legislature further defined the *policy of the State in relation to this subject* by the repeal of the State law  *  *  * and left the prosecution for violation of the Volstead Act entirely with the Federal government." He suggested that since a new Congress was then in session, the memorial of the year before be again placed before the new Congress. The Senate complied but

the Assembly refused the request.   (See N. Y. Sen. Jour. 1924, pp. 395, 567, 568; N. Y. Assem. Jour. 1924, pp. 1093, 1732.)

Finally, by chapter 850 of the Laws of 1926, the Legislature provided for a State referendum on the question of whether Congress should modify the Federal act so as not to prohibit " beverages which are not in fact intoxicating as determined in accordance with the laws of the respective States."

The public policy of the State, as shown by the foregoing record, is not in conflict with the policy of prohibition embodied in the United States Constitution.   It is in conflict merely with the interpretation put upon that policy by the Congress.   The traffic involved in this case was in beverages in fact intoxicating.

I reach the conclusion that the customary sale of beverages intoxicating in fact is both unlawful and offensive to public decency.

I, therefore, favor an affirmance of the conviction.

CROUCH, J., concurs.

Judgment of conviction reversed, indictment dismissed, bail exonerated and defendant ordered released from custody.   The reversal is solely for errors of law and not for errors of fact or as a matter of discretion, this court having reviewed all questions of fact and found no error therein.