GOLDMAN & COMPANY, INC., *v.* CITY OF NORTH
LITTLE ROCK.

4-9823                                    249 S. W. 2d 961

Opinion delivered June 23, 1952.

*Eichenbaum, Walther, Scott & Miller,* for appellant.

*W. E. Phipps* and *Glenn Zimmerman,* for appellee.

WARD, J. This suit, filed in chancery court by appellant, is an effort to enjoin the City of North Little Rock, its officials, agents and employees, from enforcing ordinance No. 2088, which ordinance was passed by the City prohibiting the maintenance, within a formerly established fire district, of businesses engaged in "junkyards, car wrecking yards, and/or storage of waste paper or rags", and declaring said businesses to be "fire and health hazards and detrimental to the public welfare". From an adverse decree of the lower court, appellant prosecutes this appeal.

Appellant, having been engaged for several years in handling waste paper, rags, and army suprlus materials,

on October 1st, 1950, purchased the property at 409-425 Gum Street in North Little Rock [within the fire district] for the purpose of storing waste paper in the two buildings thereon. At this time ordinance No. 2088 was not in existence. Not knowing what the City's rules were, appellant by letter dated August 3, 1951, requested the City Clerk to issue it a permit or license to use this property for the purpose only of storing baled waste paper, rags, surplus army materials and the like. The Clerk refused the license because there was then in effect Ordinance No. 2063 [passed May 14, 1951] which prohibited the storing of waste paper within the fire district. Thereupon appellant filed suit to enjoin the enforcement of Ordinance No. 2063, the City answered setting out the passage of Ordinance No. 2088 on August 27, 1951, and the complaint was amended so as to join the issue on the last mentioned ordinance.

The contention of appellant here, as expressed in the brief, is that Ordinance No. 2088 is arbitrary and unreasonable and that it does not regulate but prohibit. These contentions will be discussed after setting out the material facts.

Section 1 of Ordinance No. 2088 reads as follows:

"That it be, and is hereby, found and declared by the City Council of the City of North Little Rock, Arkansas, that the continued opening and operating of junk jards, car wrecking yards, and/or the baling or storage of waste paper or rags within the *fire district* of the City of North Little Rock, Arkansas, to be fire and health hazards and detrimental to the general public welfare. Therefore, from and after the passage of this ordinance, it shall be unlawful for any person, firm or corporation to open or operate a junk yard, car wrecking yard, storage or baling of waste paper or rags facility within the limits of the Fire District of the City of North Little Rock, Arkansas, and the City Clerk shall refuse to issue license for such yards and businesses of storage or baling waste paper or rags within the above described limits; provided, however, this ordinance shall not effect businesses now operating, if already licensed."

The fire district which was in existence at all times mentioned herein is shown on an exhibit and comprises approximately 105 blocks in North Little Rock. Appellant's property is located in the south and west portion of the fire district, approximately one and one-half blocks north of Broadway Street and almost due north from Broadway Bridge. The evidence and picture exhibits indicate that it is located in a residential district, but do not show too clearly the number or proximity of the residences. Also close by is heavy industrial, light industrial and commercial property. The Junior High School is something like a block and one-half away. There is a brick tile and an ironclad building on appellant's property which it proposes to use for storage, but not for baling.

It is not disputed that the storage of baled paper in these buildings would materially raise the insurance rate on the buildings, or that it would constitute a harbor for rats. Likewise it appears that the fire hazard could be reduced materially by a sprinkler system and the rat situation could be controlled to a large extent by the application of approved methods, all of which appellant proposes to install. There is now in the fire district one business engaged in baling waste paper and rags, and appellant has for 25 years been storing waste paper and rags in the Federal Compress which is in said district.

The fire district was formed in 1935 and has been enlarged from time to time, the last enlargement being made in 1948, and it conforms to requirements of the State Rating Bureau, the National Rating Bureau and the National Fire Protection Bureau. The Fire Chief stated that the storage of paper and rags was very dangerous from the standpoint of being a fire hazard. It was his opinion that newspapers stacked and weighted would catch fire, and the friction of the ink would cause an explosion. The chief sanitary officer for eleven years is familiar with the property and thinks a health hazard would be created because of rats, mice and roaches.

It is our opinion that Ordinance No. 2088 is not arbitrary or unreasonable, but that it is an exercise of

reasonable regulation on the part of the City. It is not the province of this court to decide whether this particular property can, by the adoption of modern scientific methods of control, be made reasonably safe from the standpoint of fire and health, or that these methods can and will be maintained properly at all times by the appellant if it is allowed to conduct the kind of a business proposed here. Fire district ordinances such as this one are supposed to convey some advantages to the inhabitants of a city but this could not be so if every case like this which arises is to be decided without regard to them. Just what the significance of such ordinances and districts is will appear below.

1. *Fire Districts.* From McQuillin's Municipal Corporations, 3rd Ed., Vol. 7, p. 455, under the head of "Fire Limits or Districts" we quote in part:

"Indeed, the establishment of fire limits or districts is an historic function of American local government and may well be regarded as an early and limited form or predecessor of comprehensive urban zoning. Municipal power to ordain and enforce fire limits sometimes is specifically authorized and in any event can be predicated on municipal police competency, and can be implied, it has been asserted, from the mere fact of creation of municipal corporation."

The formation of regulatory districts has been approved many times by this court, and has never been, as such, denied to be within the powers of a municipality. See *City of Little Rock et al. v. Reinman-Wolfort Automobile Livery Company,* 107 Ark. 174, 155 S. W. 105.

2. *Ordinance No. 2088.* This ordinance was passed by the City of North Little Rock pursuant to an act of the legislature passed in 1885, the material part of which appears as Ark. Stats. § 19-2304. The parts of this section applicable here read:

"*Additional powers of cities of first class.*—In order to better provide for the public welfare, safety, comfort and convenience of the inhabitants of cities of the first class, the following enlarged and additional powers are

hereby conferred upon said cities of the first class, viz: ". . . to prevent or regulate the carrying on of any trade, business or vocation of a tendency dangerous to morals, health, or safety, or calculated to promote dishonesty or crime. . ."

In this connection we call attention to the possible significance of the word "tendency" used in the above quotation.

3. *Discretion in City.* As indicated before the real issue here is whether the ordinance in question is arbitrary and unreasonable. In deciding this question we must take note that much is left to the discretion of the City in such matters, as we have often held. The case of *City of Fort Smith* v. *Van Zandt,* 197 Ark. 91, 122 S. W. 2d 187, dealt with this question in connection with the City's attempt, by ordinance, to build a wall down the middle of a street for traffic protection. We quote from the opinion:

"It may be true that appellee's property will be adversely affected, but no more so than any other property similarly situated.

"There can be no doubt that the city has the power and the duty to make reasonable provision for the safety of persons and property using its streets by the enactment of ordinances, resolutions or by-laws looking to that end, and that the city council or commission, or other municipal authorities have a wide discretion on such matters. The power is conferred by statute. Sections 9543, 9642 and 9702 of Pope's Digest. Our decisions so hold. In *Sander* v. *Blytheville,* 164 Ark. 434, 262 S. W. 23, we held that 'under the general welfare clause of Crawford & Moses' Digest, §§ 7494-4, a city council has a broad discretion in determining what is necessary for the public welfare, safety and convenience of the city's inhabitants.' Syllabus 2. In the body of the opinion we said: 'Now, there is a presumption in favor of the ordinance, and one who challenges its validity, alleging it to be arbitrary, discriminatory or unreasonable, should make it so appear by clear and satisfactory evidence.' Citing *North Little*

*Rock* v. *Rose,* 136 Ark. 298, 206 S. W. 449. In the more recent case of *State ex rel. Latta* v. *Marianna,* 183 Ark. 927, 39 S. W. 2d 301, after referring to the statutes above cited, we said: 'Such are the varied uses and conflicting interests of city life that,' as is said in *Ex Parte Foote,* 70 Ark. 12, 65 S. W. 706, 91 Am. St. Rep. 63: 'Much must necessarily be left to the discretion of the municipal authorities, and their acts will not be judicially interfered with unless they are manifestly unreasonable and oppressive, or unwarrantably invade private rights or clearly transcend the powers granted them.' "

See, also, *Sanders* v. *Blytheville, supra.*

There is also a presumption in favor of the legality and reasonableness of ordinances of this kind, as stated in *Pierce Oil Corp.* v. *City of Hope,* 127 Ark. 38, 191 S. W. 405, in these words:

"It must be, and is, conceded that the action of the council in passing ordinances of this character is presumed to be legal until the contrary is made to appear, and while the action of the council is subject to judicial review, yet in so far as a discretion abides as to the manner and extent of the use of the power conferred by the statute, that discretion is to be exercised by the council which the power is conferred, and not by the court which reviews its action, and the courts may set aside the action of the council only when they can say that the council has acted in an arbitrary or unreasonable manner.

"Every intendment is to be made in favor of the lawfulness of the exercise of municipal power making regulations to promote the public health and safety, and it is not the province of the courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations for the protection of local rights and the health and welfare of the people of the community. *Dobbins* v. *Los Angeles,* 195 U. S. 223; *Dreyfus* v. *Boone,* 88 Ark. 360. And when this is done with the ordinance in question we are unable to pronounce it void, and the decree of the court below sustaining the demurrer is, therefore, affirmed."

4. *Regulation and not prohibition.* The argument is made that Ordinance No. 2088 prohibits rather than regulates, and, that prohibitory ordinances are void, citing cases. In *Town of Arkadelphia* v. *Clark,* 52 Ark. 23, 11 S. W. 957, in a brief *per curiam* opinion the court said an ordinance prohibiting the keeping of bees within the city limits was invalid, because it undertook to make each act a nuisance without regard to whether it was so or not, or whether bees in general have become a nuisance in the city, and was therefore too broad. The decision involved no district and no question of public health and safety. This court, in *Balesh* v. *Hot Springs,* 173 Ark. 661, 293 S. W. 14, held the city could not prohibit, but could regulate the sale of merchandise by auction. It was there recognized that the question of "public interest" was a necessary element to the validity of city regulation of lawful occupations. No case has been called to our attention which denies the right of cities, in the public welfare, to regulate legitimate business, or to exclude them from certain restricted zones, so long as the action is not arbitrary or unreasonable.

The decree of the lower court in favor of appellee held, in effect, that Ordinance No. 2088 was not arbitrary or unreasonable and that the business contemplated by appellant tended to constitute a safety and health hazard to the welfare of the people of North Little Rock; and, under the rules and decisions mentioned above, we are unable to say the decree was against the weight of the evidence, and it is therefore affirmed.