WOMETCO SERVICES, INC. *v.* William D. GADDY, Commissioner of Revenues, Department of Finance and Administration

80-236                                                    616 S.W. 2d 466

Supreme Court of Arkansas
Opinion delivered May 11, 1981
[Rehearing denied June 22, 1981.]

Rose Law Firm, P.A., by: *Webster Hubbell* and *Jerry C. Jones*, for appellant.

*James R. Eads, Jr., Joseph V. Svoboda, Timothy J. Leathers, H. Thomas Clark, Jr.*, and *Robert J. DeGostin, Jr.*, by: *Cassandra Wilkins-Slater*, for appellee.

ROBERT H. DUDLEY, Justice. Appellant Wometco Services, Inc. is a South Carolina corporation registered and authorized to do business in Arkansas and is a wholly owned subsidiary of Wometco Enterprises, Inc., a Florida corporation. Wometco Services' officers and directors are not Arkansas residents. It does business in Arkansas as an operator of food and beverage vending machines, and has a Morrilton office run by an Arkansas resident. Its application for a permit to sell cigarettes through vending machines was denied by the Department of Finance and Administration on the basis of Ark. Stat. Ann. §§ 84-4505 (f) (1) and (2) (Repl. 1980). Those sections read:

> (1) No license or permit shall be granted to any individual person who is not a citizen and bona fide resident of the State of Arkansas and who has not been domiciled in this State continuously for at least one (1) year next preceding the date of his application for permit.

> (2) No license or permit shall be granted to any person,

other than an individual person, who has a manager, director, officer, member or principal stockholder who would be ineligible as an individual person to obtain a permit under provisions of this subsection.

Under the statute the residence requirements must be met by each wholesaler, retailer, dealer, salesman or vending machine owner who seeks a permit to sell cigarettes or other tobacco products. Ark. Stat. Ann. § 84-4502 (j)(m)(q)(Repl. 1980).

The circuit court affirmed the denial. On appeal Wometco Services raises three constitutional arguments: The laws violate the Commerce Clause, the Equal Protection Clause, and the Privileges and Immunities Clause of the United States Constitution. It alleges similar violations of the Arkansas Constitution.

The Tobacco Products Tax Act, of which Section 84-4505 is a part, states at Section 84-4503 that its purpose is to "regulate closely the licensing of persons to sell cigarettes and other tobacco products and to impose licenses, fees, taxes and restrictions on the privilege of dealing with, or otherwise doing business in tobacco products. It is declared to be the public policy of this State that the public convenience and advantage ought to be promoted in the granting and issuing of licenses and permits to sell tobacco products."

Yet, the sole purpose of the act is to provide a system for the collection of taxes. There is no provision in this or any other act in this State relating to the health, safety or welfare of tobacco vendors or purchasers. The sale of cigarettes can affect the public health and therefore might be prohibited or strictly regulated. If we had any such laws in Arkansas, a different question would be presented. For example, we do regulate the sale of alcoholic beverages in minute detail and because of that regulation we have held that the issuance of a license to sell those beverages is a privilege "not of right, but purely of legislative grace, and may be extended, limited or denied without violating any constitutional right." *Blum* v. *Ford*, 194 Ark. 393, 107 S.W. 2d 340 (1937). We regulate parimutuel betting and prohibit it except at a licensed track.

The regulation of this privilege caused us to uphold a statute which provided that all officers and directors of greyhound dog tracks must be qualified electors of the State, must have resided in the county where the track is located for at least two years, and had to maintain their residence in that county during their tenure in office. *Rogers* v. *Southland Racing Corp.*, 247 Ark. 1115, 450 S.W. 2d 3 (1970). We have long regulated dance halls and similar public establishments where juke boxes may lead to unwholesome conditions. *Brown* v. *Cheney*, 233 Ark. 920, 350 S.W. 2d 184 (1961), cert. den. 369 U.S. 796 (1962). The Supreme Court of the United States has approved regulation of a privilege where there is a legitimate state interest. For example, a New Orleans ordinance prohibiting pushcart food sales in the French Quarter unless the vendor had eight years' experience was upheld. *City of New Orleans* v. *Dukes*, 427 U.S. 297 (1976).

We do not, however, regulate the sale of cigarettes and other tobacco products in any way that is remotely connected with the public health, safety or welfare. The statute does declare the tobacco business to be a privilege, but that declaration is merely the introduction to the requirement that licenses and permits be obtained by persons engaged in the business. The permits are required, however, simply to make certain that the State collects the taxes levied on cigarettes and other forms of tobacco. Ark. Stat. Ann., Title 84, ch. 45. In the same way, the state requires all retailers subject to the sales tax to obtain a permit, but the only reason for the permit is to insure the collection of the sales tax, not to regulate retailers in general as a matter of public peace, health, morals, or safety.

We simply do not regulate the sale of cigarettes as a public health measure. We have a "fair trade" law authorizing cigarette dealers to fix prices, a statute of doubtful validity. Ark. Stat. Ann., Title 70, Ch. 6 (Repl. 1979); see *Union Carbide & Carbon Corp.* v. *White River Distributors*, 224 Ark. 558, 275 S.W. 2d 455 (1955). We have a 1929 statute prohibiting persons from selling tobacco to minors, Ark. Stat. Ann. § 41-2465 (Repl. 1977), but the prohibition is a dead letter as to cigarettes, because any minor can buy them

at any vending machine. Those are our only arguable restrictions relating to the sale of cigarettes.

It is fundamental that a statutory classification is permissible only if the differences in the impact of the statute are reasonably related to the purpose of the law. *Jacks* v. *State*, 219 Ark. 392, 242 S.W. 2d 704 (1951). There being no such relationship between the collection of cigarette taxes and the residence of the seller, the classification is actually nothing more than a bald effort to exclude nonresidents from engaging in business in Arkansas. That we might regulate the sale of tobacco products is immaterial.

The State may regulate business which affects public health, safety and welfare, but it may not deprive an individual of his right to conduct lawful business unless it can be shown that such deprivation is reasonably related to the State interests sought to be protected. *Dent* v. *West Virginia*, 129 U.S. 114 (1889). There is no relationship between the required residency and a valid governmental interest. It is economic protectionism which creates an artificial barrier to commerce and violates the Commerce Clause. The decisions of the United States Supreme Court have given definition to the purposes of the Commerce Clause, and Justice Jackson summarized them in *Hood and Sons* v. *Du Mond*, 336 U.S. 525, 537 (1949):

> This principle that our economic unit is the Nation, which alone has the gamut of powers necessary to control the economy, including the vital power of erecting customs barriers against foreign competition, has as its corollary that the states are not separable economic units. As the court said in *Baldwin* v. *Seelig*, 294 U.S. 511, 527 (1935), "what is ultimate is the principle that one state in its dealings with another may not place itself in a position of economic isolation."

We can find no justification for a residency requirement to tax the sale of cigarettes, and hold that the statute constitutes an unlawful discrimination against interstate concerns. It is prohibited by the Commerce Clause of the Constitution of the United States.

The dissenting opinion refers to avoidance of "bootlegging" of tobacco products. There is no proof in the record of "bootlegging" or other illegal sales. There is not even a hint by the appellee Commissioner of Revenues that the appellant Wometco has ever done any wrong. The only reason given to deny this permit is that all of Wometco's managers, directors and officers are not residents of Arkansas. Quite obviously, if this statute presently is enforced with an equal hand, no large national grocery chain would be allowed to sell cigarettes as this also would violate the statute. § 84-4505 (f).

We hold the statute unconstitutional as it is applied to nonresidents. We do not declare the entire statute unconstitutional as asked by appellant. Clearly, just as with sales tax permits, the State may require that all persons dealing in tobacco products, whether residents or nonresidents, obtain a permit in order to insure collection of the tax.

Reversed.

ADKISSON, C.J., HICKMAN and PURTLE, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. The majority's decision is wrong for four reasons.

First, there is no movement of the product in interstate commerce. Wometco sought a license to operate vending machines to sell cigarettes *retail*, not wholesale. Consequently, the question is reduced to whether a Florida corporation, acting through a subsidiary North Carolina corporation, has a constitutional right to sell cigarettes retail in Arkansas. The statute is unconstitutional only if no reasonable state of facts can be conceived that would justify Arkansas limiting the privilege to sell to Arkansas residents and those corporations principally owned by Arkansans. *McGowen* v. *Maryland*, 366 U.S. 420 (1961).

Taxes collected on tobacco products are substantial and the avoidance of such taxes by illicit sales, or "bootlegging," is a legitimate concern of the state. How are these provisions to be enforced against a nonresident? The statement of the

majority that "there is no provision in this or any other act in this state relating to health, safety or welfare of tobacco . . . purchases" is incorrect. Ark. Stat. Ann. § 41-2465 (Repl. 1977) reads: "It shall be unlawful for any person, other than the parent or guardian, to give, barter, or sell to a minor under eighteen years of age tobacco in any form or cigarette papers." Ark. Stat. Ann. § 41-2406 (Repl. 1977) defines such an act as contributing to the delinquency of a minor, a Class A misdemeanor. Arkansas does regulate tobacco sales to some degree. Since there is no movement of the goods in interstate commerce and there is a reasonable justification for the law, the law is not in violation of the Interstate Commerce Clause.

Second, not all laws favoring state residents are unconstitutional. In *Exxon Corp.* v. *Governor of Maryland*, 437 U.S. 117 (1978), a Maryland statute was upheld that essentially barred out-of-state producers and refiners of petroleum products from selling gasoline retail in Maryland. The Court stressed the fact that the Commerce Clause "protects the interstate market, not particular interstate firms from prohibitive burdensome regulations."

In *Williamson* v. *Lee Optical Co.*, 348 U.S. 483 (1955), the Court upheld an Oklahoma law that severely restricted opticians and favored optometrists and opthalmologists. In doing so the Court laid down the constitutional test regarding state protectionist statutes:

> The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought. . . . For protection against abuses by legislatures the people must resort to the polls, not to the courts. . . . *The prohibition of the Equal Protection Clause goes no further than the invidious discrimination.* [Emphasis added.]

In *City of New Orleans* v. *Dukes*, 427 U.S. 297 (1976), the Court upheld a New Orleans city ordinance that favored

experienced street vendors over newcomers. In upholding this ordinance the Court said:

> When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. *Unless classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.* States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. ... In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. [Emphasis added.]

Recently the United States Supreme Court dealt with legislation that favored a Minnesota industry over out-of-state firms. In upholding this law the Court said:

> A nondiscriminatory regulation serving substantial state purposes is not invalid simply because it causes some business to shift from a predominantly out-of-state industry to a predominantly in-state industry. Only if the burden on interstate commerce clearly outweighs the State's legitimate purposes does such a regulation violate the Commerce Clause.

*Minnesota* v. *Clover Leaf Creamery Co.*, 101 S.Ct. 715 (1981).

When these decisions are applied to the facts before us, it is clear to me that Arkansas can prohibit a Florida corporation from operating through yet another foreign corporation to sell cigarettes retail in Arkansas.

The third reason for disagreeing with the majority opinion is that this case involves a privilege. There is no right to sell cigarettes. States are given wide latitude in regulating privileges; a privilege can be banned altogether. *Rodgers* v. *Southland Racing Corp.*, 247 Ark. 1115, 450 S.W. 2d 3 (1970);*Hinebaugh* v.*James*, 119 W. Va. 162, 192 S.E. 177 (1937).

Finally, the majority's decision is wrong because it misapplies two of our decisions. In *Rodgers* v. *Southland Racing Corp.*, *supra*, we upheld a law that required *all* officers and *all* directors of Southland to not only be residents of Arkansas but residents of Crittenden County for two years. In doing so we clearly stated why Arkansas could so act:

> The operation of a dog track, with legalized gambling, is unquestionably a privilege which the state might prohibit altogether if it chose to do so. Fortune telling and the sale of intoxicating liquors fall in that same category and may be similarly prohibited ... that being true, the State may impose conditions upon the exercise of the privilege beyond those that might be imposed upon the enjoyment of matters of common right.

> Statutes restricting the issuance of liquor licenses to local residents have frequently been sustained. ... Such a statute is a permissible exercise of the State's police power.

Later we upheld a law that denied any nonresident the right to operate "juke boxes." *Brown* v. *Cheney*, 233 Ark. 920, 350 S.W. 2d 184 (1961), *cert. denied* 369 U.S. 796 (1962). Juke boxes are hardly a great factor in the health, safety or welfare of Arkansans. The General Assembly simply decided that a license to operate a juke box was a privilege that should be taxed. We upheld the law. Contrary to the majority's statement, there is no "regulation" of juke boxes in Arkansas related to health, welfare or safety. In doing so we said:

> It is significant we think that our legislature,

without successful challenge, has many times favored residents over nonresidents in regulating certain privileges, such as: The manufacture and sale of wine (Ark. Stats. § 48-110); Retail beer dealers (§ 48-515); Fur dealers (§ 47-202); The taking of mussels (§ 47-601, C.), and The practice of optometry (§ 72-806).

Appellant's contention that Act 120 violates Article 2, §§ 2, 3, 18, 19 and 29 of the State Constitution has been examined and found without merit. Section 2 deals with inalienable rights — not with privileges; Section 3 refers to discrimination based on race or color; Section 18 refers to discriminations between citizens or class of citizens; Section 19 refers to monopolies; and, Section 29 deals with rights retained by the people. We are unable to see how any of the above sections are related to or are violated by Act 120.

The majority too easily ignores the statutes, our decisions, and the United States Supreme Court decisions. The majority decision simply cannot be squared with the facts or the law.

I respectfully dissent, finding the Arkansas law constitutional as it is presumed to be.

ADKISSON, C.J., and PURTLE, J., join in this dissent.