The Honorable Joe E. Yates State Senator 1812 Clark Bentonville, AR 72712
Dear Senator Yates:
This is in response to your request for an opinion regarding Act 893 of 1989, which is entitled "An Act to Amend Arkansas Code 26-57-212 Pertaining to Reporting by Wholesale Tobacco Products Dealers." You note in your correspondence that Act 893 imposes new record keeping requirements upon wholesale tobacco products dealers who do business in the state but whose main warehouse or headquarters is located outside the state. A new subsection is also added to A.C.A. 26-57-212, requiring the non-resident wholesaler's segregation of stock purchased for distribution within Arkansas from stock purchased for sale or distribution in another state. Acts 1989, No. 893, 1 (f).
You have requested our opinion as to what valid governmental interest, if any, justifies the distinction under Act 893 between resident and non-resident wholesalers of tobacco products. And you have asked, specifically, whether this act violates the commerce clause or any other provision of the United States Constitution or the Arkansas Constitution, if there is not a valid relationship between the location of a wholesaler's main warehouse or headquarters and the collection of cigarette taxes.
Section 1 of Act 893 adds a new subsection (e) to A.C.A. 26-57-212 which states in part as follows:
Every tobacco product wholesaler doing business in this State, and whose main warehouse or headquarters is in another state, shall keep a record of all purchases and sales transactions involving cigarettes, cigars, cigarette papers, snuff and other tobacco products. The record shall be maintained at a facility located in Arkansas.
This section also imposes specific penalties, including fines and eventual permanent license revocation, for failure to maintain the records.
The record-keeping requirement does not, in my opinion, impose a clearly excessive burden on interstate commerce in relation to the state's legitimate purpose in insuring the collection of taxes. The following flexible approach to commerce clause questions, adopted in the case of Pike v. Bruce Church, Inc., 397 U.S. 137 (1970) will in all likelihood apply in this instance:
Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.
397 U.S. at 142; see also, Raymond Motor Transportation, Inc. v. Rice,434 U.S. 429, 441 (1978). It should be initially noted that the record-keeping requirement in this instance could presumably also affect resident wholesalers whose main warehouses are located out of state. It is not directed specifically toward non-resident tobacco wholesalers. It must also be recognized that inspection of resident wholesalers is authorized under A.C.A. 26-57-212 and 26-57-213.
It may therefore be successfully contended that the record-keeping requirement regulates evenhandedly to facilitate inspection and to insure collection of taxes, and that any effect on interstate commerce is only incidental. It is significant to note in this regard that the Arkansas Supreme Court has previously affirmed the state's right to impose a permit requirement in order to insure collection of the tax. Wometco Services, Inc. v. Gaddy, 272 Ark. 452, 455 457, 616 S.W.2d 266 (1981). A court may similarly conclude that the record-keeping requirement is a legitimate means toward that end.
The penalties imposed under the new 26-57-212(e) may, however, pose a different question. Successive penalties are imposed on the wholesaler whose main warehouse or headquarters is in another state, for failure to maintain the records, culminating in permanent license revocation. This penalty provision may be subject to attack under the Equal Protection clause of the U.S. Constitution, based upon the assertion that there is no rational basis for distinction in this regard between wholesalers whose main warehouse or headquarters is in another state, and those with such facilities in Arkansas. The penalty should, it seems, apply equally. Subsection (e) is, therefore, in my opinion constitutionally suspect to this extent.
With regard to the requirement under subsection (f) involving the separation of stock, it is my opinion that this provision will in all likelihood withstand constitutional scrutiny. Subsection (f) states in pertinent part that ". . . stock purchased for distribution within Arkansas shall be kept in an entirely separate part of the building, separate and apart from stock purchased for sale or distribution in another state."
Bearing in mind the tenet that all doubt must be resolved in favor of constitutionality, Stone v. State, 254 Ark. 1011, 1013, 498 S.W.2d 634
(1973)), it may reasonably be concluded that the state's legitimate interest in making certain that the products are properly taxed and that they are fresh and uncontaminated (A.C.A. 26-57-202) will outweigh this requirement's effects on interstate commerce. This requirement is obviously aimed toward the Director of the Department of Finance and Administration's ability to effectively inspect the stock. Its reasonableness in this regard will in all likelihood withstand scrutiny. The evenhandedness of the requirement may, however, be questioned to the extent that an Arkansas wholesaler has stock purchased for sale or distribution in another state. This will involve a factual question, and does not, in my opinion, necessarily render this portion of the act unconstitutional on its face.
Thus, in conclusion, it is my opinion that Act 893 will in all likelihood withstand constitutional scrutiny, with perhaps the exception of the penalties imposed under subsection (e).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
STEVE CLARK Attorney General
SC:arb