Linda PHILLIPS and Marvin Phillips *v.* TOWN OF OAK GROVE, Arkansas, and Jean Morgan, Mayor, Sam Jones, Alderman, Gary High, Alderman, Pat Davis, Alderwoman, Vicki Allen, Alderwoman, and Willard Standlee, Alderman, in Their Official Capacities as the Mayor and Town Council of the Town of Oak Grove, Arkansas

97-898                                                    968 S.W.2d 600

Supreme Court of Arkansas
Opinion delivered May 7, 1998

*Lisle Law Firm, P.C.,* by: *Stephen Lisle,* for appellants.

*Epley, Epley & Parker, Ltd.,* by: *Lewis E. Epley, Jr.* and *Tim S. Parker,* for appellees.

RAY THORNTON, Justice. In 1987, the town of Oak Grove adopted Ordinance 20, which prohibits the keeping of swine or fowl for commercial purposes within the town limits. Appellants Marvin and Linda Phillips breed emus for sale on their property in Oak Grove. The appellees are the town of Oak Grove, the mayor, and members of the town council. When the Town charged them with violating the Ordinance, the Phillipses responded with a motion for summary judgment challenging the Ordinance's constitutional validity. Oak Grove counterclaimed, asking for a declaratory judgment that the ordinance was valid. The chancellor granted Oak Grove's motion for summary judgment, ruling that the Ordinance was a valid enactment that was rationally related to Oak Grove's legitimate government concerns for the health, safety, and welfare of its citizens. We affirm the chancellor's ruling.

In attacking the constitutional validity of the Ordinance, the Phillipses raise the following three arguments on appeal: Oak Grove cannot prohibit a lawful business when it does not constitute a nuisance; an ordinance that classifies on the basis of commerce is an arbitrary exercise of Oak Grove's police power; and

prohibiting all animals of the Aves class is overbroad for the purpose of preventing the encroachment of large-broiler houses into the Town.

Oak Grove is an incorporated town with a population of about 230 residents. In 1987, its town council passed Ordinance 20 in response to concerns arising from commercial fowl and hog operations in the Northwest Arkansas area. The stated purposes of the Ordinance are as follow:

> WHEREAS, the Town of Oak Grove, Arkansas, is located in close proximity to areas of expanding commercial broiler houses and other commercial activities, and it is necessary to enact measures to protect the citizens of the Town of Oak Grove from the deleterious effects of such commercial activities if carried on within the town limits; and
>
> WHEREAS, the Council of the Town of Oak Grove has determined that this Ordinance is necessary in order to protect the residents of the Town of Oak Grove from offensive or noxious odors, and
>
> WHEREAS, the passage and approval of this Ordinance will improve and protect the order, peace, comfort, convenience, safety, general welfare, health and prevent injury from offensive or unhealthy matters[.]

This ordinance makes unlawful the "raising, keeping, growing, maintenance, husbandry or quartering of either swine or fowl within the town limits of the Town of Oak Grove, by any person for any commercial purpose." As defined in the ordinance, the term "fowl" includes all members of the zoological class "Aves," including chickens, turkeys, ducks, geese, quail, guineas, and other domestic or wild birds. The Ordinance expressly allows "limited activities strictly for personal consumption by an individual and not involving other parties."

The Phillipses purchased emus and began raising them for commercial purposes on their property within the town limits. Emus are members of the Aves zoological class and are second in size only to the ostrich, weighing in excess of one hundred pounds at maturity. In 1995, Mayor Morgan ordered the Phillipses to remove their emus from the town limits. When the Phillipses refused, Oak Grove filed a criminal misdemeanor action in

municipal court for keeping emus in violation of Ordinance 20. The Phillipses countered by filing this action in chancery court seeking a declaratory judgment that the Ordinance was invalid. Oak Grove counterclaimed, asking for a declaratory judgment that the Ordinance was a valid, rationally related exercise of Oak Grove's power to enact laws for the general health, safety, and welfare of its citizens. Oak Grove suspended its criminal complaint pending the outcome of the chancery court decision. The chancellor granted Oak Grove's motion for summary judgment and this appeal ensued.

## I.

■ Municipal corporations derive their legislative powers from the general laws of the state. Ark. Const. art. 12, § 4. A municipality has no powers except those expressly conferred by the legislature, and those necessarily or fairly implied as incident to or essential for the attainment of the purpose expressly declared. *City of Lowell v. M & N Mobile Home Park, Inc.*, 323 Ark. 332, 336, 916 S.W.2d 95, 97 (1996).

■ In *Springfield v. City of Little Rock*, 226 Ark. 462, 290 S.W.2d 620 (1956), we recognized the city's plenary duty to exercise its police power in the interest of the public health and safety of its inhabitants. *Id.* at 464-65, 290 S.W.2d at 622. The police power of the state is founded in public necessity and this necessity must exist in order to justify its exercise. *Id.* It is always justified when it can be said to be in the interest of the public health, public safety, public comfort, and when it is, private rights must yield to public security, under reasonable laws. *City of Little Rock v. Smith*, 204 Ark. 692, 695, 163 S.W.2d 705, 707 (1942) (quoting *Beaty v. Humphrey*, 195 Ark. 1008, 115 S.W.2d 559 (1938). The State has authorized the municipalities to legislate under the police power in Ark. Code Ann. § 14-55-102 (1987). That section provides, "Municipal corporations shall have the power to make and publish bylaws and ordinances, not inconsistent with the laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof.

■ Under its grant of power, cities and incorporated towns can "[p]revent injury or annoyance within the limits of the municipal corporation from anything dangerous, offensive, or unhealthy and cause any nuisance to be abated within the jurisdiction given the board of health in § 14-262-102[.]" Ark. Code Ann. § 14-54-103 (1987).

■ In light of these statutes, the town of Oak Grove has the authority to legislate for the protection of the public health. The preamble to Ordinance 20 makes clear that Oak Grove is legislating under its police power when it states that its purpose is to protect the residents of the town from the deleterious effects of commercial broiler activities, to protect against offensive or noxious odors, and to protect the order, peace, comfort, convenience, safety, general welfare, health and prevent injury from offensive or unhealthy matters. The Phillipses private rights must yield, unless we find that Oak Grove has acted in excess of the authority conferred.

## II.

The Phillipses argue first that the town of Oak Grove cannot prohibit a lawful business when it does not constitute a nuisance. The appellees, on the other hand, contend, and the chancellor agreed, that the controlling law is stated in *City of Lowell v. M & N Mobile Home Park*, 323 Ark. 332, 916 S.W.2d 95 (1996). In *Lowell*, we declared that judicial review of a legislative enactment is limited to determining whether the legislation is arbitrary, capricious, and unreasonable. *Id.* at 339, 916 S.W.2d at 98. The legislation is not arbitrary if there is any reasonable basis for its enactment. *Id.*

The Phillipses argue that Arkansas law requires a municipality first to determine that an activity poses a threat to its citizens before it may regulate that activity under its police power. The crux of their argument is that there is no evidence that their emu farm is a nuisance or a threat, and that because it is a lawful business, Oak Grove does not have the authority to prohibit it. This argument has two parts, which we address seriatim. The first question is whether a municipality can regulate an activity that is

not a nuisance under its police power, and the second question is whether a municipality can prohibit a lawful business.

A.

The Phillipses rely on *Town of Arkadelphia v. Clark*, 52 Ark. 23, 11 S.W.2d 957 (1889) for the proposition that a nuisance must exist before the town can regulate under its police power. In a brief *per curiam* opinion, we stated that the ordinance prohibiting the keeping of bees within the city limits was invalid because it declared each act a nuisance and was therefore too broad. *Id.* at 25, 11 S.W. at 958. We said that bees may become a nuisance but whether they are so or not is a question to be judicially determined in each case. *Id.* Our decision in *Clark* stated that municipalities cannot legislatively declare some activity to be a nuisance. We did not address the question of public health and safety in that case. Contrary to the Phillipses' assertion, *Clark* does not hold that a municipality must first determine that an activity is a nuisance before it can regulate that activity under its police power.

In fact, the mere possibility of a public harm is sufficient basis for the municipality to regulate under its police power. The United States Supreme Court, in affirming an Arkansas Supreme Court decision, said that a "business lawful today may in the future, because of the changed situation, the growth of population or other causes, become a menace to the public health and welfare, and be required to yield to the public good." *Pierce Oil Corp. v. City of Hope*, 248 U.S. 498, 500 (1919) *aff'g* 127 Ark. 38, 191 S.W.2d 405 (1917) (quoting *Dobbins v. Los Angeles*, 195 U.S. 223, 238 (1904)).

In *Pierce Oil Corp.*, the City of Hope enacted an ordinance forbidding the storing of petroleum, gasoline, and other oil products within three hundred feet of any dwelling, beyond certain small quantities specified. *Pierce Oil Corp.*, 248 U.S. at 499. The appellant in that case was engaged in the business of selling petroleum oil and gasoline and had tanks on the right of way of a railroad in the city. Appellant presented evidence that an explosion was impossible and that the location of the tanks did not endanger nearby buildings. He alleged that he could not store the tanks in

the city without violating the ordinance. He claimed that the ordinance was arbitrary, unnecessary, and unreasonable, and that the enforcement would deprive him of his property without due process of law in violation of the Fourteenth Amendment of the United States Constitution.

Notwithstanding the Fourteenth Amendment or the absence of pleaded facts showing a nuisance, the Court held that a state may prohibit the sale of dangerous oil products; and it may make the place where they are kept or sold a criminal nuisance. *Pierce Oil Corp.*, 248 U.S. at 499-500. With approval, the Court noted our declaration that a court may take judicial notice that disastrous explosions have occurred for which no satisfactory explanations have ever been offered. *Id.* at 500. Observing that "[t]he unexpected happens," the Court recognized that combustion was possible, and that the ordinance undertook to limit its effects. *Id.* More to the point, the California supreme court said,

> A city clearly has power to pass general police regulations to prevent nuisances, and such power is not limited to the suppression of those things which are nuisances per se . . . .
>
> . . .
>
> Whenever a thing or act is of such a nature that it may become a nuisance, or may be injurious to the public health, if not suppressed or regulated, the legislative body may, in the exercise of its police powers, make and enforce ordinances to regulate or prohibit such act or thing although it may never have been offensive or injurious in the past.

*Ex parte Mathews*, 214 P. 981, 983, 191 Cal. 35 (1923), *reh'g denied* 209 P. 220 (1923) (internal citation omitted).

■ Under our holding in *Pierce Oil Corp.*, a lawful business that poses the possibility of harm can be regulated, even if the effect of the ordinance excludes the operation of the business within the city limits. In the present case, an emu farm is a lawful business; and it is subject to all appropriate laws relating to farm animals. Ark. Code Ann. § 2-32-101 (Repl. 1996). Unlike the *Pierce Oil Corp.* ordinance, the express language of the Oak Grove ordinance acts as a complete bar to the commercial keeping of fowl and swine within the town limits.

.

## B.

We have repeated often that a business, lawful in itself and not a nuisance per se, may be regulated but not prohibited. We know of no cases, however, that apply this rule with the rigidity that the Phillipses request. Rather, we have always considered whether the legislation is otherwise arbitrary, capricious, and unreasonable; and we uphold the enactment if there is any rational basis for its enactment. *See Hackler v. City of Fort Smith*, 238 Ark. 29, 377 S.W.2d 875 (1964); *Goldman & Co., Inc. v. City of North Little Rock*, 220 Ark. 792, 249 S.W.2d 961 (1952) (upholding an ordinance that prohibited junkyards within a limited district in the city; noting that the ordinance was not *arbitrary or unreasonable* when the business contemplated by appellant tended to constitute a safety and health hazard to the welfare of the people); *City of Morrilton v. Malco Theatres, Inc.*, 202 Ark. 100, 149 S.W.2d 55 (1941) (holding that the city had the power to regulate *reasonably*, but could not prohibit appellee from operating more than one picture show; stating that the court may consider the effect of the ordinance in practical application, but that after the business has been authorized and the owner has incurred expense, the city has power only to regulate and not prohibit its use); *Arkansas R.R. Comm'n v. Castetter*, 180 Ark. 770, 22 S.W.2d 993 (1929) (recognizing that no individual can be deprived of the right to engage in lawful business in any manner he sees proper so long as he *does not use such right in a manner to injure others*); *Balesh v. Hot Springs*, 173 Ark. 661, 293 S.W. 14 (1927) (holding that the city could not prohibit, but could regulate the sale of merchandise by auction; noting that the Legislature may not *arbitrarily* interfere with private business, or impose *unusual or unnecessary* regulations upon lawful occupations).

The Phillipses rely on *Hackler*, a case in which the ordinance prohibited blasting or use of explosives in quarrying operations located within the city limits of Fort Smith. *Hackler*, 238 Ark. at 29, 377 S.W.2d at 875. In that case, appellants produced convincing evidence at trial that blasting could be done safely by having small quantities of the blasting agent set off in a series, rather than in one large explosion. *Id.* at 32, 377 S.W.2d at 877. We first noted that a quarry operation was a lawful business and that it was

not a nuisance per se, and as such, it could be regulated but not prohibited. *Id.* at 33, 377 S.W.2d at 876. We then held that the city did not have the power to absolutely prohibit blasting at rock quarries within the city when it was shown that the blasting could easily be regulated. *Hackler,* 238 Ark. at 33, 377 S.W.2d at 877.

In *Hackler,* while we stated the "regulation versus prohibition rule" distinctly, we did not apply the rule rigidly. Instead, we considered the appellant's expert-witness testimony that blasting could be done safely. The expert testified that he had placed a seismograph near the quarry and measured the vibrations from blasting done with small quantities of explosives. *Hackler,* 238 Ark. at 32, 377 S.W.2d at 877. The seismographic readings verified that a person standing within 60 feet of the point of explosion experienced no harm, and that the nearest dwellings were about 250 feet from the quarry. *Id.* In reversing the chancellor's decision to uphold the ordinance, we found, in effect, that there was no rational basis for prohibiting the activity when appellants proved that blasting could be done safely within the city limits.

After the *Hackler* case in 1964, our decisions have made even more clear our application of the rational-basis test to ordinances that purport to prohibit lawful businesses under the police power. In *Piggott State Bank v. State Banking Bd.,* 242 Ark. 828, 416 S.W.2d 291 (1967), after declaring that the banking business is closely related to the public welfare and within the police power of the state, we said that the power extends to the regulation or even the prohibition of the business except on such terms as the state may prescribe. *Id.* at 831-32, 416 S.W.2d at 294. Likewise, in *Wometco Servs., Inc. v. Gaddy,* 272 Ark. 452, 616 S.W.2d 466 (1981), in invalidating an ordinance that contained a one-year residency requirement before a vendor could be licensed to conduct business in Arkansas, we said that the State may regulate business that affects public health, safety, and welfare; but it may not deprive an individual of his right to conduct lawful business unless it can be shown that such deprivation is reasonably related to the State interests sought to be protected. *Id.* at 456, 616 S.W.2d at 468-69. In light of these decisions, the town of Oak Grove may regulate and even prohibit commercial swine and fowl businesses

under its police power unless it can be shown that there is no rational basis for the deprivation.

## III.

The Phillipses contend next that, even if we apply the rational-basis test, an ordinance that classifies on the basis of commerce is an arbitrary exercise of Oak Grove's police power. They note that, under the provisions of the Ordinance, it is unlawful to keep birds for commercial purposes, yet it is lawful to keep the same number or even greater numbers of birds for personal use. They argue that an ordinance that classifies on the basis of profit is arbitrary and, therefore, void.

■ The issue is not whether the legislation allows difference in treatment of activities generally similar in character, but whether there is a rational basis for the difference. *See J. W. Black Lumber Co., Inc. v. Arkansas Dept. of Pollution*, 290 Ark. 170, 172-73, 717 S.W.2d 807, 809 (1986). The equal protection clause does not require that all persons be dealt with identically, only that classifications rest on real rather than feigned differences, that the distinctions have some relevance to the purpose for which the classification is made, and that the treatment be not so disparate as to be wholly arbitrary. *Id.* at 173, 717 S.W.2d at 809. When examining the distinction, we consider whether any rational basis exists that shows the possibility of a deliberate nexus with state objectives. *Allen v. State*, 327 Ark. 350, 358, 939 S.W.2d 270, 274.

■ The party alleging that legislation is arbitrary has the burden of proving that there is no rational basis for the legislative act, and regardless of the evidence introduced by the moving party, the legislation is presumed to be valid and is to be upheld if the court finds a rational basis for it. *City of Lowell*, 323 Ark. at 340, 916 S.W.2d at 99.

Ordinance 20 prohibits the keeping of fowl for commercial purposes, yet allows "limited activities strictly for personal consumption by an individual and not involving other parties." Observing the usual presumption of constitutional validity, we can conclude that there is a nexus between a classification based on

commerce and the legislative concern for the peace, health, safety, comfort, and welfare of the public. Commercial broiler houses have been expanding in the area surrounding Oak Grove. To protect the citizens of the town from deleterious effects of these types of commercial activities, Oak Grove, following valid procedures, enacted this Ordinance.

We can reasonably conceive that the term, "commercial," connotes large volume. To be sure, the dictionary definition of the term confers a meaning of "large scale," or "large market." *See Merriam-Webster's Collegiate Dictionary* 231 (10th ed. 1993). The local authorities may well have concluded that a farmer who keeps a small number of emus for commercial purposes will likely expand his business as he prospers, quantitatively adding to the bodily waste product from these animals, which smells, decays, attracts pests, and can cause disease. *See City of Springdale v. Chandler*, 222 Ark. 167, 168-69, 257 S.W.2d 934, 935 (1953) (observing that it might be arbitrary to prevent the keeping of few hens at a place where it would not be arbitrary or unjust to prevent the keeping of thousands of chickens). If that judgment is correct, then the private keeping of birds would have a less harmful effect on public health. A rational nexus is apparent, therefore, between Oak Grove's stated purposes and the distinction based on commercial (large) or private (small) operations.

The law of equal protection has never mandated that either all evils be extinguished, or none at all. Rather, it allows legislation that recognizes degrees of evil. *See J.W. Black Lumber Co., Inc. v. Arkansas Dept. of Pollution*, 290 Ark. 170, 717 S.W.2d 807 (1986). We cannot say that Oak Grove acted arbitrarily, capriciously, or unreasonably when it chose to prevent the keeping of fowl for commercial purposes within the town limits, while permitting limited activities strictly for private consumption.

The Phillipses argue that a rational basis did not exist when the town could have accomplished its purposes through zoning ordinances, or numerical restrictions, minimum property sizes, and concentration limits. We find no merit in this argument. Even if Oak Grove could have written the Ordinance with greater precision, under rational-basis review, the United States

Supreme Court has held that we are bound "to accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Heller v. Doe*, 509 U.S. 312, 321 (1993). The Court said further, "A classification does not fail rational-basis review because it is not made with mathematical [precision] or because, in practice it results in some inequality." *Id. See also, Pierce Oil Corp., infra*, 248 U.S. at 500.

On appellate review of legislative enactments, we will not reverse a chancellor's finding of fact unless it is clearly erroneous. *City of Lowell*, 323 Ark. at 339, 916 S.W.2d at 97. We do not give the same deference to a chancellor's conclusion of law. *Id.* If a chancellor erroneously applies the law and the appellant suffers prejudice, the erroneous ruling is reversed. *Id.* Here, the chancellor found that keeping a large number of birds within the town limits constituted a threat to the peace, health, safety, comfort, and welfare of the town's residents. We cannot say that the chancellor committed error in his judgement, either in fact, or in law when he ruled that the ordinance was rationally related to a legitimate-government purpose.

## IV.

As their final point on appeal, the Phillipses assert that prohibiting all animals of the Aves class is overbroad for the purpose of preventing the encroachment of large-broiler houses and hog farms into the town. The Phillipses argue that Oak Grove did not even contemplate emu farms when they enacted the Ordinance. They contend that because their emus have not been found to be a nuisance, the zoological classification of Aves is overinclusive.

In support of their position, the Phillipses rely on *Town of Dyess v. Williams*, 247 Ark. 155, 444 S.W.2d 701 (1969) for the proposition that the town's purpose can be accomplished by enacting an ordinance that directly prohibits the objectionable operation. In *Dyess*, the town passed an ordinance that required all businesses in town to close from midnight to 4:00 a.m. to prevent teenagers and other youth from causing disturbances late at night. We invalidated the ordinance, stating that the same purpose

could be accomplished by prohibiting the objectionable conduct of the youth rather than making lawful businesses close.

*Dyess* is inapplicable to the facts before us. In that case, the businesses were not creating the disturbances that the town sought to address, and we held that the sweep of the ordinance went too far beyond the necessities of the situation. In this case, it is the commercial raising of fowl that creates the danger to the public health, and the Ordinance addresses that danger directly.

Rather, we respond with Justice Holmes's opinion in *Pierce Oil Corp.*, where he acknowledged that an enterprise may not ostensibly threaten the problems that led to the enactment of the ordinance. *Pierce Oil Corp.*, 248 U.S. at 500. Justice Holmes commented that the mere fact that the ordinance may embrace some innocent objects, that of itself neither invalidates the law nor removes the objects from the grasp of the law. *Id.* at 500-01. It is not our role to discover the *actual basis* for the legislation, but rather to consider if *any* rational basis exists that demonstrates the possibility of a deliberate nexus. *Johnson*, 306 Ark. at 505, 816 S.W.2d at 587. We can reasonably conceive that the emu operation may grow and present the same concerns for the health, safety, and welfare of Oak Grove residents as large-poultry operations.

In summary, we conclude that Ordinance 20 is not arbitrary, capricious, or unreasonable, but that it is a legitimate exercise of reasonable regulation by the town of Oak Grove. The Phillipses failed to show that there was no rational basis for the enactment. Consequently, we hold that the town of Oak Grove acted within its lawful discretion in prohibiting the keeping of swine or fowl for commercial purposes within the town limits, and the chancellor's finding that there was a rational basis was not clearly erroneous. Affirmed.

NEWBERN and GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. I agree with the majority's conclusions that municipal corporations may, under the police power, legislate for the protection of the public health and may also regulate lawful businesses that pose the possibility of harm.

However, I strongly disagree with the determination that the Town of Oak Grove, and other towns and cities, can prohibit such businesses when a rational basis can be shown for the deprivation. In truth, what the majority's decision has accomplished is nothing short of sending out a loud message that if municipalities want to get rid of what they wish to label an undesired activity, all they have to do is couch it in commercial terms. The message is wrong and its long-term consequences can lead to pernicious future municipal legislation.

The majority concedes that this court has often repeated the rule that a business, lawful in itself and not a nuisance per se, may be regulated but not prohibited. See Hackler v. City of Fort Smith, 238 Ark. 29, 377 S.W.2d 875 (1964) (citations omitted). However, the majority states that we have never applied this rule rigidly, since we have always analyzed ordinances that purport to prohibit lawful businesses under rational-basis review. The majority then cites many cases which it argues support this proposition. All of these cases, however, are factually distinguishable from the instant case, and instead they show the flaw in the majority's logic. For example, in *City of Morrilton v. Malco Theatres, Inc.*, 202 Ark. 100, 149 S.W.2d 55 (1941), we said that the power of the city council extended only to the right to regulate reasonably and *did not include the power to prohibit* the Malco Theatres, or others, from conducting its lawful business. (Emphasis added.) Even more persuasive, this court in *City of Morrilton* added that the power to prohibit a lawful business has not been conferred upon municipalities. *Id.* Also, in *Goldman & Co., Inc. v. City of North Little Rock*, 220 Ark. 792, 249 S.W.2d 961 (1952), while we did uphold the regulatory ordinance in question after applying the rational-basis test, the ordinance did not go so far as the one we are presented with today.

In addition, the two cases given in support of the conclusion that prohibition of businesses will be tolerated in this state are also distinguishable. In *Piggott State Bank v. State Banking Bd.*, 242 Ark. 828, 416 S.W.2d 291 (1967), the power to prohibit was specifically supported by statute and was a mere continuation of the authority to regulate the banking business. And in *Wometco Servs., Inc. v. Gaddy*, 272 Ark. 452, 616 S.W.2d 466 (1981), the ordi-

nance was actually struck down on constitutional grounds — the restriction in question found to have gone too far.

This court should be reminded that municipal regulation of industries, businesses, trades and occupations is not without its limitations. It is limited by public policy to promote the growth of commerce and industry. McQuillin Mun Corp § 24.323 (3rd Ed). While I recognize that, at times, there is a fine line between what constitutes a regulation and what is a prohibition, the ordinance in this case is nothing but a sweeping prohibition not supported by our statutes or case law.

I respectfully dissent.

Newbern, J., joins this dissent.