The Honorable Ruth R. Whitaker State Senator Post Office Box 349 Cedarville, Arkansas 72932-0349
Dear Senator Whitaker:
You have requested my opinion about an ordinance of the City of Fayetteville. You ask whether Ordinance No. 5280 is "enforceable" and whether it "violates the freedom of privacy."
RESPONSE
As for the ordinance's enforceability, I take it that you are asking whether (1) the various regulations in the ordinance fall within the city's police powers, and (2) whether those regulations conflict with state law. As explained further below, I believe most of the regulations likely fall within the city's police power and do not conflict with any state statute. But one provision acts as a kind of access-to-information provision, which I believe may be suspect. As for whether the ordinance "violates the freedom of privacy," I take it that you are asking whether any provision in the ordinance violates the right of privacy contained in Arkansas's Constitution. I do not believe the ordinance violates that right.
DISCUSSION
This office has a long-standing policy prohibiting it from construing or interpreting the provisions of local ordinances. Nevertheless, I and my predecessors have reviewed such ordinances to determine their consistency with state law. See Op. Att'y Gen. Nos. 2004-173, 2001-258, 99-287, and 97-038. Accordingly, in what follows I assess whether the ordinance conflicts with any state laws, but I do not analyze federal law. There may be some federal statutes or regulations that legislate on some of the same areas as the ordinance. If so, then an appropriate fact finder needs to determine whether that federal law supersedes the ordinance in whole or part.
General Rules Regarding Municipal Powers Municipal corporations derive their legislative powers from the general laws of the state. Ark. Const. art. 12, § 4. Municipalities have no powers except those expressly conferred by the legislature, and those necessarily or fairly implied as incident to or essential for the attainment of the purpose expressly declared. Philips v. Town of Oak Grove,333 Ark. 183, 189, 968 S.W.2d 600, 603 (1998); Op. Att'y Gen. 2003-047. "The State has authorized the municipalities to legislate under the police power in Ark. Code Ann. § 14-55-102 (1987). That section provides, `Municipal corporations shall have the power to make and publish bylaws and ordinances, not inconsistent with the laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof.'" Philips, 333 Ark. at 189, 968 S.W.2d at 603.
A city has the "plenary duty to exercise its police power in the interest of the public health and safety of its inhabitants. The police power of the state is founded in public necessity and this necessity must exist in order to justify its exercise. It is always justified when it can be said to be in the interest of the public health, public safety, public comfort, and when it is, private rights must yield to public security, under reasonable laws." Id. (internal citations omitted).
The legislature has specifically empowered cities to "[p]revent injury or annoyance within the limits of the municipal corporation from anything dangerous, offensive, or unhealthy and cause any nuisance to be abated within the jurisdiction given the board of health in § 14-262-102." A.C.A. § 14-54-103(1) (Repl. 1998). This statute contains two grants of legislative power depending on the geographic area encompassed by the city's ordinance. The first grant enables the municipality to, within its city limits, "[p]revent injury or annoyance . . . from anything dangerous, offensive, or unhealthy. . . ." The second grant enables the municipality to, within a one-mile radius outside its city limits, "cause any nuisance to be abated. . . ."[1]
Under both grants of power, the "mere possibility of a public harm is a sufficient basis for the municipality to regulate under its police power. Id. at 191, 968 S.W.2d at 604. There are some special rules that apply when a city exercises its authority to abate nuisances. The case law distinguishes between activities that are always a nuisance (i.e. "nuisances per se") and activities that are not always a nuisance but may become one depending on the circumstances. (i.e. "nuisance per accidens").[2] Any business that is not a nuisance per se may be regulated but not prohibited. Philips,333 Ark. at 193, 968 S.W.2d at 605. "[A] lawful business that poses the possibility of harm can be regulated, even if the effect of the ordinance excludes the operation of the business within the city limits." Id.
Specific Provisions of the Ordinance
Before applying the above law to this ordinance, it will be helpful to delineate the types of activities the ordinance purports to govern:
Blasting. The ordinance places several restrictions on blasting: (1) geographical restrictions on the blasting sites;[3] (2) degree of blasting charge cannot exceed certain levels already in place by other governmental agencies;[4] and (3) time restrictions on when blasting can be conducted.[5]
Operation of the rock quarry itself. The ordinance (1) restricts the time the rock quarry may operate;[6] (2) restricts the types of activities that can take place at the quarry;[7] (3) places licensing restrictions on all quarry operators;[8] and (4) requires that all dump trucks servicing the quarry have an identification number of a certain kind, height, and placement.[9]
Items constituting a possible nuisance per accidens. The ordinance purports to regulate several substances: (1) dust;[10] (2) dirt and mud;[11] (3) loose rock and gravel;[12] (4) tailgate banging.[13]
Access to information. The ordinance requires that any rock-quarry operator to disclose, upon request, information about any dump truck owner or operator including the latter's name, address, and contract information.
Analysis
Of the four categories of regulations, in my opinion, the first three categories fall within the city's police power and do not conflict with any state law. As noted above, the Arkansas Supreme Court has generally adhered to the view that cities have broad discretion to determine what is necessary for the public welfare, safety, comfort, and convenience. See, e.g., Smith v. City of Arkadelphia, 336 Ark. 42,984 S.W.2d 392 (1999); Sander v. Blytheville,164 Ark. 434, 262 S.W.2d 23 (1924). See also A.C.A. § 14-55-102." Op. Att'y Gen. 2003-047. Whether the regulated activities amount to nuisances per accidens is, as noted above, a highly factual determination that initially rests in the city's discretion. Because I am not a fact finder when issuing opinions, I cannot assess whether the regulated activities do amount to nuisances per accidens.
In contrast, the analysis of the access-to-information provision is more complicated. The access-to-information provision purports to empower any Fayetteville official or citizen to obtain the contact and contract information for dumps servicing the rock quarry:
The rock quarry operator shall maintain an up-to-date and accurate log of the owner and operator of each numbered dump truck and shall immediately supply the owner an operator's name, address and contract information to any Fayetteville employee, official or citizen who requests such information.[14]
When reviewing a municipal ordinance that is within the city's police power, the Arkansas Supreme Court has stated that it will uphold the regulation if it has some rational basis:
 [W]e have always considered whether the legislation is otherwise arbitrary, capricious, and unreasonable; and we uphold the enactment if there is any rational basis for its enactment.
Philips, 333 Ark. at 193, 968 S.W.2d at 605.
The access-to-information provision raises two threshold questions. First, does the provision even fall within the city's police power? Second, assuming it does fall within that power, is there some rational basis supporting it? I believe that answer to both questions is: "It is unlikely, but not entirely clear."
It is unclear whether the city may use its police power to require the contract between two private businesses to be laid bare before anyone who asks. But even assuming the police power allows such a regulation, there remains the question whether that particular use of the police power is, as the Arkansas Supreme Court stated, "arbitrary, capricious, and unreasonable." This standard for evaluating city regulations is very factual, and I am not a fact finder when issuing opinions. But I will note that it is hard to discern any reasonable governmental purpose that is served by allowing any Fayetteville citizen access to a contract between two private parties. If the purpose is merely to identify the dump truck that is allegedly violating the regulations, the required ID numbers seem sufficient for that purpose.
You also asked whether the ordinance violates the "freedom of privacy." By this phrase, I take it that you are referring to Arkansas's constitutional protection of privacy. There is some question about whether Arkansas's constitutional protection of privacy extends in all respects to corporations. Even assuming it does, however, I believe the ordinance in question would not violate any constitutional protections.
Assistant Attorney General Ryan Owsley prepared the foregoing opinion, which I hereby approve.
Sincerely,
Dustin McDaniel Attorney General
DM/RO:cyh
[1] This second grant of power states: "[A city may] cause any nuisance to be abated within the jurisdiction given the board of health in § 14-262-102." The "jurisdiction given the board of health in § 14-262-102" refers to a one-mile radius outside the city's limits. There is a slight ambiguity in subsection 14-54-103(1)'s reference to the "jurisdiction of the board of health in § 14-262-102." The term "jurisdiction" can refer to either subject-matter jurisdiction or a geographical area within which an entity has authority to act. The latter is the most plausible reading of "jurisdiction" in the context of subsection 14-51-103(1) for two reasons. First, the board of health is a subdivision of the city. Thus, whatever powers the board of health has, the city has; though, the inverse is obviously not true. Second, subsection 14-51-103(1) contains a grant of subject-matter jurisdiction (i.e. abating nuisances), so all that is needed is a grant of the geographical area within which the city may abate nuisances. That area is provided for in section 14-262-102.
[2] See also Theil v. Cernin,224 Ark. 854, 856-57, 276 S.W.2d 677, 678 (1955); Brading v. County of Georgetown, 327 S.C. 107, 115, 490 S.E.2d 4, 8 (1997).
[3] The ordinance states: "No rock blasting shall be allowed within 60 yards of any house within the city limits of Fayetteville." § 113.02(A)(1).
[4] The ordinance states: "No rock blasting explosive charge or location shall exceed the most restrictive limitations within the federal, state[,] and Washington County regulations or laws." § 113.02(A)(2).
[5] The ordinance states: "All rock blasting . . . shall only be allowed between the hours of 10:00 a.m. and 3:00 p.m. on the first and third Wednesday of each month unless such Wednesday is a federal or state holiday. . . ." § 113.02(A)(3).
[6] The ordinance states: "All rock quarries within the city limits of Fayetteville or within one mile beyond the city limits of Fayetteville shall only be allowed to operate during the period of 7:00 a.m. until 6:00 p.m. Monday through Friday, and during 7:00 a.m. until noon on Saturday. . . .No rock quarry shall be allowed to operate on a federal recognized holiday or Sunday." § 113.02(B)(1).
[7] The ordinance states: "No major noise producing activities shall occur before 8:30 a.m. or after 4:30 p.m. on a weekday or anytime on a Saturday or Sunday." § 113.02(B)(1).
[8] The ordinance states: "All rock quarries within the city limits of Fayetteville or within one mile beyond the city limits of Fayetteville shall be prohibited from any operations until the owner/operator of such quarry has obtained a valid, annual Rock Quarry operating License. . . ." § 113.02(B)(2).
[9] The ordinance states: "In order for citizens to easily and correctly identify dump trucks and their owner/operators who are servings the rock quarry, the rock quarry operator shall require any dump truck . . . servicing his facility to have an easy to read four digit number [of a certain height and placement]. . . ."
[10] "All rock quarries within the city limits of Fayetteville or within one mile beyond the city limits . . . shall only be allowed to operate with the followed safeguards . . . to ensure that dust . . . and all other possible irritants or nuisance substances do not adversely affect Fayetteville residents. . . .Water or other substances or measures must be fully effective during the operation of the rock quarry to ensure the quarry is in full . . . compliance with the requirements of the Arkansas Water and Air Pollution Control Act as administered by the Arkansas Department of Environmental Quality [ADEQ]. A violation of the permit conditions required by the ADEQ can be grounds for a suspension or revocation of the . . . [operator's] license." § 113.02(C)-(C)(1).
[11] "The rock quarry operator is required to ensure that any and all vehicles leaving the rock quarry shall have all mud and dirt removed from the tires and exterior parts of the body of the vehicles prior to exiting the site onto public roads." § 113.02(C)(2).
[12] "The rock quarry operator . . . [must] ensure that all dump trucks leaving the . . . quarry . . . that may utilize any city street and are carrying more than half a truck load of gravel, rocks[,] or dirt have their load fully and properly covered." § 113.02(C)(3).
[13] "It is the express duty of the rock quarry operator to prevent a dump truck delivering anything to the quarry or receiving rock from the quarry to engage in Dump Truck Tailgate Banging as defined [in another section of the ordinance]." § 113.02(D)
[14] § 113.02(C)(4).